**In the Matter of Elizabeth LAPPIE, Application for Sanitary Land Fill.**

Supreme Judicial Court of Maine.

Aug. 30, 1977.

Perkins & Townsend, by Clinton B. Townsend, Skowhegan, for appellant.

H. Cabanne Howard, Asst. Atty. Gen., Augusta, for Board of Environmental Protection.

Wallace A. Bilodeau, Skowhegan, for Elizabeth Lappie.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

POMEROY, Justice.

Pursuant to the Site Location of Development Law (38 M.R.S.A. § 481 *et seq.*) and the Solid Waste Management Act (38 M.R.S.A. § 1301 *et seq.*,), Elizabeth Lappie notified the Board of Environmental Protection (Board) of her intention to construct and operate a sanitary land fill. In April 1976, after holding public hearings, the Board approved the Lappie application. The appellant, Earl Babcock (an abutting landowner), appealed the Board's decision to the Law Court pursuant to 38 M.R.S.A. § 487.

Babcock asserted that the Board's findings with regard to Mrs. Lappie's financial condition and the access road were not supported by substantial evidence. The Board and Mrs. Lappie appear before this court as appellees.

We deny the appeal.

■ The appellant is a *"person aggrieved"* by the Board's decision and as such has standing to appeal the decision to this court under 38 M.R.S.A. § 487. The Board asserts that an appellant must be aggrieved by a particular finding[1] of the Board in order to have standing to appeal on the ground that the particular finding is not supported by substantial evidence.[2]

We do not agree.

Appeal rights from the decision of an administrative tribunal are prescribed by a number of statutes. While the language employed in these statutes is often similar, the requirements for standing to appeal may differ[3] depending on the purpose of the administrative agency and on the interests the agency was created to protect.[4]

The issue of standing to appeal decisions of administrative bodies has long been a troublesome one, both in this court and in the federal courts, including the Supreme Court of the United States. *See Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Data Processing Service v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Oklahoma v. United States Civil Service Commission,* 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947); *Scripps-Howard Radio v. F.C.C.,* 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); *F.C.C. v. Sanders Brothers Radio Station,* 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940); *Cohen v. Board of Selectmen of the Town of Kennebunk,* Me., 376 A.2d 853 (1977); *In Matter of International Paper Co.,* Me., 363 A.2d 235 (1976).

■ It seems clear from the decided cases that in order to be considered a person

---

1. 38 M.R.S.A. § 484 requires the Board to make findings as to adequacy of financial capacity, provision for traffic movement, fitting the development harmoniously into the environment, and suitability of soil types before approving the development.

2. The Board denies that the appellant was aggrieved by the acceptance of Mrs. Lappie's access road because it is located on the side of the Lappie property farthest from the appellant's land.

3. *See, e. g.,* 38 M.R.S.A. § 487 ("Any person aggrieved by any order of the Board of Environmental Protection, pursuant to this Article may within 30 days after notice of such order, appeal therefrom to the Supreme Judicial Court pursuant to the provisions of Rule 73(f) of the Maine Rules of Civil Procedure"); 12 M.R.S.A. § 4757 ("Any person having a recorded interest in wetlands affected by any such order of the [Board of Environmental Protection] may, within 90 days after notice thereof, appeal to the Superior Court for the county in which the wetland is situated for the purpose of determining whether such order so restricts the use of property as to deprive the owner of the reasonable use thereof or constitutes the equivalent of a taking without compensation"); 35 M.R.S.A. § 303 ("Any person, who has opposed and participated in opposition to applications, petitions or commission proceedings upon which a public hearing was held and who is adversely affected by the final decision of the

[Public Utilities Commission], is deemed a party for purposes of taking an appeal from such decision"); 29 M.R.S.A. § 2124 ("If any person is aggrieved by the decision of the Chief of the State Police in refusing [to grant a license as an official inspection station], he may within 30 days thereafter appeal to the Superior Court, by filing a complaint"); 38 M.R.S.A. § 415 (with regard to water pollution, "[e]xcept where otherwise specified by statute, any person aggrieved by any order or decision of the [Board of Environmental Protection] in regard to any matter upon which there was a hearing before the [board] and of which a transcript of said hearing is available, may, within 30 days after notice of the filing of such order or decision, appeal therefrom to the Superior Court by filing a notice of appeal stating the points of appeal").

4. *Cf. F.C.C. v. Sanders Brothers Radio Station,* 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940), where the Court stated:

"Congress had some purpose in enacting § 402(b)(2). It may have been of opinion that one likely to be financially injured by the issue of a license would be the only person having a sufficient interest to bring to the attention of the appellate court errors of law in the action of the Commission in granting the license. It is within the power of Congress to confer such standing to prosecute an appeal." 309 U.S. at 477, 60 S.Ct. at 698.

with standing to seek judicial review of an administrative order, such person must demonstrate a particularized injury from the order. *In Matter of International Paper Co., supra* at 239; *cf. Sierra Club v. Morton, supra* (appellant must show he is adversely affected); *Louden Hill Farm, Inc. v. Milk Control Commission,* 420 Pa. 548, 217 A.2d 735 (1966) (appellant must show direct injury); *Community College of Delaware County v. Fox,* 20 Pa.Cmwlth. 335, 342 A.2d 468 (1975) (appellant must show direct injury); *Committee to Preserve Mill Creek v. Secretary of Health,* 3 Pa.Cmwlth. 200, 281 A.2d 468 (1971) (appellant must show direct injury).

It is the particularized injury which gives standing where appeal rights are accorded to persons aggrieved.

Most administrative orders adjudicate private rights, but almost inevitably such orders have far-reaching effect on public rights. Legislative bodies could, and frequently do, empower and direct the attorney general or some other public officer to seek judicial review of an administrative order in an appropriate case in order to protect the public rights. More often, however, review rights are accorded to private persons when such persons are adversely affected by the entry of an order. It seems obvious that the legislative rationale is that one who is adversely affected by the entry of an administrative order, whether a formal party to the administrative proceeding or not, is more likely to be aware of the details of the administrative proceeding than are members of the public generally. Such persons are more likely to seek judicial review to assure that the administrative body acts consistently with the standards prescribed by the statute. Although a person adversely affected is likely to be motivated by considerations of his personal interest, his action results in vindication of the public interest.

It is this reasoning which has given rise to the concept of "private attorney general" described in such cases as *Sierra Club v. Morton, supra; Data Processing Service v. Camp, supra;* and *Scripps-Howard Radio v. F.C.C., supra.*

The thought was expressed by the Supreme Court of the United States in *Sierra Club v. Morton, supra,* as follows:

"Taken together, *Sanders* and *Scripps-Howard* thus established a dual proposition: the fact of economic injury is what gives a person standing to seek judicial review under the statute, but once review is properly invoked, that person may argue the public interest in support of his claim that the agency has failed to comply with its statutory mandate." 405 U.S. at 737, 92 S.Ct. at 1367.

■ These cases demonstrate that once a person has standing as a "person aggrieved" by virtue of a particularized injury resulting from an administrative order, such person may raise any and all issues which affect the validity of the order, without regard to whether such issue specifically relates to such injury.

■ In the present case Babcock's particularized injury results from the environmental impact occasioned by the granting of the waste disposal facility license. In the future, a solid waste disposal facility on Mrs. Lappie's property may pose problems of rodent control, litter, and seepage into ground water. Babcock becomes a "person aggrieved" and thus a person having standing to seek judicial review of the Board's order by virtue of this potential for particularized injury. Having such standing, he is in a position to assert any claim of defect in procedure of the Board or that the Board's order resulted from findings not supported by substantial evidence.

38 M.R.S.A. § 484 provides that before the Board approves a project it must find, among other things:

"1. Financial capacity. The developer has the financial capacity and the technical ability to meet state air and water pollution control standards, and has made adequate provision for solid waste disposal, the control of offensive odors, and the securing and maintenance of sufficient and healthful water supplies.

"2. Traffic movement. The developer has made adequate provision for traffic movement of all types out of or into the development area."

In support of her claim of financial capacity, Mrs. Lappie presented evidence in the form of letters from two banks with whom she had previously done business. In one letter it is said that the appellee had created an excellent credit rating with that bank. In the other letter, the writer, a banker, opined that she was capable of handling the financial responsibilities which would devolve upon her, should her project application be approved.

At the hearing, a witness called by the appellant testified under oath that in his judgment, as a person experienced in the handling of solid waste, the access road to the proposed project was adequate to provide for the projected traffic. An opposite opinion was voiced by a person present who was not sworn as a witness.

The alleged inadequacy of the letters and the unsworn testimony seem to be the basis for the appellant's claim that the Board's findings as to 38 M.R.S.A. § 484(1) & (2) were not supported by substantial evidence and for this reason should be reversed.

This court must look at all of the evidence presented and determine if, based on that evidence, the Board could fairly and reasonably reach the decision that it did. *In Re Maine Clean Fuels, Inc.*, Me., 310 A.2d 736 (1973).

We view the two letters presented by Mrs. Lappie as adequate for the Board's finding that she had sufficient financial capacity to meet all environmental standards, if the Board in fact was so persuaded on that issue. The overall cost of financing the project was relatively minor. Thus, the establishment of that particular requirement of the law undoubtedly did not loom large as a controlling factor for the issuance or denial of a permit in the Board's decision. Moreover, the testimony of Babcock's witness that the access road was adequate is sufficient to support the Board's decision regarding the access road.

We certainly cannot say that the Board was unjustified as a matter of law in reaching the conclusions it did.

We find nothing in the record which impeaches the conclusions which the Board reached as the basis for granting the license to such an extent that we must set the Board's action aside.

The entry must be:

Appeal denied.

All Justices concurring.