Daphne E. WILLIAMS

v.

Marion R. WILLIAMS.

Supreme Judicial Court of Maine.

Argued March 5, 1982.

Decided April 21, 1982.

Limberis & Macdonald, Christopher G. Limberis (orally), George P. Limberis, Bangor, for plaintiff.

Sandy & Sandy, Robert E. Sandy, Jr. (orally), Waterville, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, CARTER and WATHEN, JJ.

CARTER, Justice.

The defendant, Marion Williams, appeals from the judgment of the Superior Court, Penobscot County, vacating the judgment of the District Court. The District Court had granted the defendant's motion seeking reduction of the amount of alimony paid by him to his former wife, Daphne Williams. We affirm the judgment of the Superior Court.

1. By the terms of the support award, the defendant's obligation for child support has *apparently* ceased except perhaps with respect to the youngest son, Michael, who was 21 years old at the time of the hearing.

2. The order amending the alimony award provides:

It is hereby ordered, adjudged and decreed that the original decree dated May 3, 1971 be and hereby is altered and amended by striking out the following words:

"And Eight Hundred Fifty Dollars ($850.00) per month as alimony, first payment to be made May 1, 1971 and to continue monthly thereafter until further order of Court."

and inserting in place thereof:

## I.

The parties were married in 1951 and divorced by a District Court decree in 1971. The divorce decree which incorporated an agreement of the parties awarded custody of the four children of the marriage to the plaintiff. The decree also ordered the defendant to pay $100 per month for each child as child support and to pay $850 per month as alimony.

In August 1979, Dr. Williams brought a motion in District Court seeking reduction of the alimony award. He did not seek reduction of child support payments.[1] Following a hearing, the District Court issued an order reducing, over a two year period, the alimony award from the original amount of $850 per month to $400 per month.[2] Pursuant to D.C.Civ.R. 73(a), Mrs. Williams appealed to the Superior Court. The Superior Court, finding that the evidence did not support a modification of the divorce decree, vacated the District Court's order. This appeal followed.

## II.

On this appeal, we attach no presumptive validity to the judgment of the Superior Court. When the Superior Court acts as an intermediate appellate tribunal, we traditionally review directly the initial determination of the adjudicatory body below rather than the decision of the Superior Court. *See e.g., Driscoll v. Gheewalla*, Me., 441 A.2d 1023, 1026 (1982) (Zoning Board of

"It is further ordered that the said Marion R. Williams shall pay to the said Daphne E. Williams the sum of Six Hundred Dollars ($600.00) per month as alimony, the first payment to be made on January 1, 1980; then on January 1, 1981 said payments shall be reduced to Five Hundred Dollars ($500.00) per month; and then on January 1, 1982 said payments shall be further reduced to Four Hundred Dollars ($400.00) per month and shall continue until further order of the Court."

In all other respects the original decree to remain in full force and effect.

The District Court also issued a decree ordering the defendant to pay $5,050 for arrearage in child support and alimony payments. This order is not at issue on this appeal.

Appeals); *State v. Ann Marie C.*, Me., 407 A.2d 715, 721 (1979) (Juvenile Court). Accordingly, as in other cases involving divorce related proceedings, we here review the action of the District Court. *See Ziehm v. Ziehm*, Me., 433 A.2d 725 (1981) (child custody order); *Harmon v. Emerson*, Me., 425 A.2d 978 (1981); *Howell v. Howell*, Me., 418 A.2d 181 (1980) (record insufficient for either Superior Court or Law Court to ascertain whether District Court abused its discretion); *Bagley v. Bagley*, Me., 415 A.2d 1080, 1084 (1980) (modification of agreement incorporated in divorce decree).

■ The modification of an alimony award rests with the sound discretion of the trial judge.[3] *See Smith v. Smith*, Me., 419 A.2d 1035, 1037 (1980); *see also Capron v. Capron*, Me., 403 A.2d 1217, 1218 (1979). As postured by the parties, the sole issue presented on appeal is whether the facts of this case establish a sufficient change of circumstances to justify the modification order.

## A. *Circumstances of the Payor Spouse*

Dr. Williams is a 55 year old dentist who lives in California. Shortly after the divorce he retired from the Air Force and began working for the California prison system. In 1975, he became the chief dentist at the California Institute for Men.

The defendant testified that as a result of leaving the Air Force he incurred increased expenses for such items as housing, transportation, meals and continuing education. The increase is caused by the loss of certain military benefits, *e.g.*, military subsidization of meals, and the costs of civilian life, *e.g.*, transportation and clothing expenses. The increase in expenses as to housing and transportation amounts to approximately $330 per month.

With respect to income, Dr. Williams currently draws a salary from the State of California and a pension from the Air Force. In 1971, his take home pay from the Air Force was approximately $1,800 per month. At the time of the hearing, he received $2,273 per month from the state in take home pay and a pension of $1,511 per month.

The defendant's tax returns reflect the following information:

| | Adjusted Gross Income (AGI) | Taxable Income (TI) |
|---|---|---|
| 1974 | 52,492 | 34,194 |
| 1975 | 60,065 | 38,550 |
| 1976 | 63,705 | 40,764 |
| 1977 | 48,782 | 40,520 |
| 1978 | 49,579 | * 45,010 |

* Tax Table Income

From 1974 to 1978, Dr. Williams claimed three of the four sons from the prior marriage as exemptions.[4] The tax returns are filed as joint returns because Dr. Williams has remarried. His current spouse stopped working in 1976 because of medical problems.

The defendant testified that at the time of the divorce, his only outstanding indebtedness was his car loan. He estimated his current liabilities at approximately $17,000. Dr. Williams does not own his own home or have any other significant assets. He also provides some support for Michael, the youngest of the four sons from the prior marriage. That son attends college in California.

## B. *Circumstances of the Recipient Spouse*

Mrs. Williams is 59 and a high school graduate. She has not remarried. The plaintiff has no professional skills and was not employed until just prior to the divorce.

She is currently employed by the Bangor School System as an aide. In 1971, she earned $61 per week for the 39 week term of employment. The plaintiff now earns $118 per week for a 42 week period. Mrs. Williams does not work during the summer

---

3. The power of the court to modify an alimony award is embodied in 19 M.R.S.A. § 721 which provides: "[t]he court may at any time alter, amend or suspend a decree for alimony or specific sum when it appears that justice requires it...."

4. Several months prior to the hearing, the IRS questioned the defendant's taking of these exemptions in certain years because more than half of their expenses while in college were paid from sources other than the support provided by the defendant.

months. The plaintiff also works part-time at McDonalds, a hamburger restaurant. She is paid by the hour, currently $3.60 per hour, and her hours are not consistent from week to week. Mrs. Williams estimated that she usually averaged $185 per month from her job with McDonalds but indicated that she only received $550 in the first nine months of 1979. From October 1978 to August 1979, Mrs. Williams received income of $120 in the form of rent from a boarder at her house.

The plaintiff's tax returns reflect the following data:

| | AGI | TI | Alimony (included in AGI) |
|---|---|---|---|
| 1971 | 8,605 | 5,326 | 6,800 |
| 1972 | 12,467 | 9,097 | 9,600 |
| 1973 | 13,029 | 7,324 | 9,600 |
| 1974 | 13,295 | 7,551 | 9,600 |
| 1975 | 13,863 | unknown | 9,600 |
| 1976 | 13,445 | 8,294 | 9,600 |
| 1977 | 15,426 | 15,426 * | 9,600 |

* Tax Table Income

In 1973 and 1974, Mrs. Williams claimed her three sons as exemptions. From 1975 to 1978, she claimed two of her sons as exemptions.

Mrs. Williams owns a house in Bangor, formerly owned by both parties. Dr. Williams estimated the value of the house at $45,000. The balance remaining on the mortgage is $9,414 with eleven years left on the loan. Monthly payments are $173 and have increased since the divorce because of increased costs for insurance and taxes.

Mrs. Williams testified that she owed a department store $975 for appliances and two other stores approximately $300. She owes $634 for her automobile. The plaintiff testified that she suffered from hypertension and that her doctor told her to "take it easy."

## C. Merits of the Appeal

 As a general proposition, the financial circumstances of both the payor and the recipient of alimony should be taken into account by the trial court in deciding whether to modify an alimony award. *Smith,* 419 A.2d at 1037 (payor spouse); *Mitchell v. Mitchell,* Me., 418 A.2d 1140,

1143 (1980) (recipient spouse). Examination of both spouses' financial condition is in accord with the considerations involved in initially formulating an alimony award—the husband's ability to pay, the wife's station in life and her financial worth and income. *See Bryant v. Bryant,* Me., 411 A.2d 391, 395 (1980); *Strater v. Strater,* 159 Me. 508, 517–18, 196 A.2d 94, 98–99 (1963). In short, in order to reduce an alimony award, the moving party must show a change in the payor's ability to pay or the recipient's need for support or both. *See Alibrando v. Alibrando,* 375 A.2d 9, 15 (D.C. 1977); 25 Am.Jur.2d, Divorce and Separation §§ 675–77 (1966). Inasmuch as the original alimony award should be based upon the circumstances of both spouses at the present and in the foreseeable future, *Bryant,* 411 A.2d at 395, a change of circumstances necessary to effect a modification must be substantial. *See Smith,* 419 A.2d at 1037 (substantial change in payor spouse's financial condition); *Mitchell,* 418 A.2d at 1144 (recipient's assets have not significantly increased; change of circumstances "illusory"); *see generally* Annot., 18 A.L.R.2d 10 (1951).

 The plurality of considerations involved in evaluating a motion for modification requires that the Law Court accord unusual deference to the findings of the trial court.

Where the question is one of the modification of alimony or support, however, an even more deferential standard of review is applicable: Absent a violation of some positive rule of law, this Court will overturn the trial court's decision of such a question only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument.

*Smith,* 419 A.2d at 1038. Moreover, since neither party, in the instant case, requested specific findings of fact and conclusions of law pursuant to D.C.Civ.R. 52(a), we assume that the trial court made all the findings necessary to support his decision. *Id.* Despite these restrictive standards guiding our examination of the question raised on appeal, we nevertheless affirm the Superior

Court's *vacatur* because we find no evidence to indicate substantial change in the parties' circumstances justifying the modification order.

 The defendant suggests that his remarriage, loss of military benefits, limited assets and substantial debts support the modification order. However, remarriage, change of jobs or increased indebtedness does not *necessarily* justify reduction of an alimony award, especially when the change of conditions were voluntarily brought about by the payor or do not affect his ability to meet his alimony obligation. *See e.g., Smith,* 419 A.2d at 1038 (voluntary retirement does not automatically produce substantial change in condition); *Schuler v. Schuler,* —— Mass. ——, ——, 81 Mass.Adv. Sheet 195, 416 N.E.2d 197, 202–203, 205 n.10 (1981) (good faith or involuntary career change exception to general rule that trial court may consider potential rather than actual earnings; second family expenses may warrant modification of alimony); *Binder v. Binder,* 7 Mass.App. 751, 756, 390 N.E.2d 260, 264 (1979) (voluntary contributions to education of sons, ages 23 and 25, and to support of payor's father do not rise to level of changed circumstances in context of case); *Besaw v. Besaw,* 89 Wis.2d 509, 516–520, 279 N.W.2d 192, 195–97 (1979) (remarriage of payor not considered a compelling ground for modification of alimony; rule relaxed when children born of second marriage); *Carter v. Carter,* 563 P.2d 177, 179 (Utah 1977) (remarriage and other subsequently and voluntarily acquired obligations do not mandate reduction of alimony); *Sanchione v. Sanchione,* 173 Conn. 397, 405, 378 A.2d 522, 527 (1977) (inability to pay must be excusable and not result of payor spouse's neglect, extravagance or other unacceptable reason); *Sieber v. Sieber,* 258 N.W.2d 754 (Minn.1977) (voluntary sale of business reducing future income and sporadic employment insufficient to overturn lower court's denial of modification request when payor spouse could engage in gainful employment if he cared to do so; no evi-

dence of substantial change in payor's standard of living, yet former wife dependent on alimony payments).

In the instant case, Dr. Williams has presented no evidence indicating the effect of his remarriage or his current liabilities on his ability to meet his alimony obligation or suggesting a change in his financial well-being flowing from these circumstances. The defendant also failed, in the production of evidence, to convert his aggregate liabilities into monthly obligations, or to provide the court with a basis to do so, thereby precluding an evaluation of the monthly effect of his debt load on his current financial status. Similarly, Dr. Williams testified that he currently supports a 21 year old son attending college but does not suggest how much longer this expense would continue.[5] The only effect of the existing alimony obligation articulated at the District Court hearing was the defendant's statement that because of the alimony payments, he would be unable to retire in the very near future. This is an unpersuasive reason, given the amorphous nature of the retirement plans and the age and health of the defendant.

More important and compelling in the instant case is that the income of the defendant has *increased* since the time of his divorce even though his current spouse ceased working in 1976. The taxable income of Dr. Williams has risen from $34,194 in 1974 to over $40,000 in 1977 and 1978. The defendant's earnings from the Air Force amounted to $1,800 per month in 1971, the time the original award was issued. His combined monthly earnings from his service pension and state wages currently total over $3500.

 In light of the above, we find no basis to conclude that a substantial change in the defendant's financial condition has occurred to justify the reduction order of the District Court. We do not suggest that the circumstances raised by the defendant

---

**5.** The defendant's previous support of his now independent sons is irrelevant since the modifi-

cation order operates prospectively.

can never be grounds for modifying an alimony award. The defendant has simply failed to establish that, since the time of the divorce decree, *his* situation renders him unable to meet the obligations associated with his first marriage.

Further, the financial status of Mrs. Williams does not suggest that she is no longer in need of the support provided by the 1971 award. Her earnings have increased only slightly and are still meager in comparison to those of her former husband. Alimony represents over half of her means of support. Indeed, assuming the plaintiff's 1978 wages remain constant, the effect of the modification order in 1982 is that Mrs. Williams' total income will be less than her total income in 1972. Mrs. Williams' equity in the Bangor house might be considered in some circumstances to be a factor bearing on her current worth particularly since the children no longer reside in the house. No evidence was presented, however, indicating a change in circumstances since the time of the original decree due to the ownership of the house; the bald fact of equity in the home is insufficient to overcome the compelling evidence of this case suggesting no substantial change in either spouse's financial status.

The entry is:

Judgment of the Superior Court affirmed.

All concurring.