## BRADBURY MEMORIAL NURSING HOME

v.

## TALL PINES MANOR ASSOCIATES

and

### Department of Human Services.

Supreme Judicial Court of Maine.

Argued Sept. 19, 1984.

Decided Dec. 18, 1984.

---

Dyer, Goodall & Zeegers by Donna L. Zeegers (orally), Augusta, for plaintiff.

Edward E. White, Jr., Asst. Atty. Gen., Dept. of Human Services (orally), Augusta, Preti, Flaherty & Beliveau by John P. Doyle, Jr. (orally), Estelle A. Lavoie, Portland, for defendants.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

On this appeal Bradbury Memorial Nursing Home ("Bradbury Memorial"), the operator of a nursing home in Belfast, attacks the validity of a certificate of need ("CON") granted by the Maine Department of Human Services to Tall Pines Manor Associates ("Tall Pines") to build a 70-bed nursing home in that city. The Superior Court (Kennebec County) denied the appeal and so do we.

## The Facts

The Maine Certificate of Need Act of 1978, 22 M.R.S.A. §§ 301–325 (1980 & Supp.1984–1985), regulates Maine's health care system. Under that regulatory scheme, a nursing home may be constructed only after the issuance of a CON by the Department of Human Services.

On April 22, 1982, the Department amended its 1978 regulations to designate Belfast a priority area for the construction of up to 70 additional nursing home beds. The 1982 amendments also set forth procedures for the filing of applications for the required CON and for the Department's review of competing applications. Prior to the deadlines for filing applications for a CON for the development of the additional nursing home beds in Belfast, Tall Pines and two other firms submitted the documentation necessary to qualify as applicants. The other two Belfast applicants were Bradbury Manor Associates ("BMA"), which proposed to buy and renovate the existing nursing home of Bradbury Memorial and to expand it by 30 beds, and Northport Associates ("Northport"), which like Tall Pines proposed to build a new 70-bed facility in Belfast.

Pursuant to the 1982 amendments, the Department would notify an applicant whether its application was complete or needed to be supplemented. Those amendments stated that "[w]here additional information is required, applicants shall submit completed applications no later than August 10, 1982." All completed applications filed by August 10, 1982, were to be reviewed competitively in a review cycle beginning August 1, 1982. If only one timely letter of intent or application was filed, the Department could begin its review at any time after the application was complete. If an application did not meet the August 10 deadline, it was to be placed in a review cycle beginning on the 15th of each month (the first such cycle beginning August 15, 1982). Finally, 22 M.R.S.A. § 307(3) provides an aggregate period of 150 days for the Department to reach its decision.

After the Department found that none of the three competing Belfast applicants had met the August 10, 1982, deadline, all three supplemented their applications to the Department's satisfaction. The Department then placed the three applications in a review cycle beginning on October 15, 1982 (and ending 150 days later—by the Department's calculation, on March 13, 1983). In December 1982, following its review of the competing applications pursuant to 22 M.R.S.A. § 307(4), the Maine Health Systems Agency ("MHSA") recommended that BMA's application be approved and that the applications of Tall Pines and Northport be denied. The final decision either to issue a CON or to deny the application for a CON is, however, exclusively the Department's. 22 M.R.S.A. § 307(5–A) (Supp. 1984–1985).

While the Department was considering the pending applications, the Kennebec County grand jury indicted Northport's principal sponsor for crimes allegedly committed in the operation of a nursing home. On February 11, 1983, a staff member of the Department expressed concern that a "related party" problem existed in BMA's plans to buy Bradbury Memorial; a one-third owner of Bradbury Memorial was the proposed administrator of the new expanded institution to be created by BMA. If the proposed purchase was a "related party transaction," BMA would be ineligible for Medicaid reimbursement for the purchase price, and the financial feasibility of the BMA's application would be thrown in doubt. By letter dated March 4, 1983, BMA withdrew its CON application. On April 4, 1983, the Department granted a CON to defendant Tall Pines and denied the application of Northport.

On April 25, 1983, plaintiff Bradbury Memorial, which had previously had no part in the administrative proceeding, filed with the Department a petition for reconsideration pursuant to 22 M.R.S.A. § 310. That section permits any person "directly affected" to request a reconsideration hearing for good cause shown. In a lengthy letter

dated May 25, 1983, Commissioner Michael Petit explained the Department's reasons for issuing the CON to Tall Pines and announced the Department's finding that Bradbury Memorial's request failed to demonstrate good cause for a reconsideration hearing.

Plaintiff Bradbury Memorial then filed a complaint in the Superior Court seeking declarative and injunctive relief and review of final agency action pursuant to 5 M.R.S.A. §§ 11001–11008 (1979 & Supp.1984–1985), 14 M.R.S.A. §§ 5951–5963 (1980 & Supp.1984–1985), and M.R.Civ.P. 80C. The Superior Court rejected plaintiff's request for an evidentiary hearing in that court and, upon reviewing the Department's decision for any error of law, affirmed its issuance of a CON to Tall Pines.

## I. *Standing of Bradbury Memorial*

Neither of the other applicants for a Belfast CON has sought judicial review of the Department's decision to grant a CON to Tall Pines. The present review proceeding was commenced solely by Bradbury Memorial, whose existing nursing home is faced with competition from the facility for which Tall Pines has received authorization. Contrary to the contention of defendants Department and Tall Pines both in the Superior Court and here, we hold that Bradbury Memorial has standing to obtain judicial review.

■ The Certificate of Need Act, 22 M.R.S.A. § 311, gives "any person aggrieved by a final decision of the department" the right to review in accordance with the Administrative Procedure Act, 5 M.R.S.A. §§ 11001–11008. The Department's decision to issue a CON is not "considered final until the Department has taken final action on a request for reconsideration under section 310." 22 M.R.S.A. § 311. Section 310 provides that "[a] person directly affected by a review may, for good cause shown," ask for a reconsideration of the Department's decision to issue a CON. The Department's denial of Bradbury Memorial's reconsideration request constituted the final agency action from which a person

aggrieved can appeal to Superior Court. *See Hale v. Petit,* 438 A.2d 226, 230 (Me. 1981).

■ In addition to meeting the statutory requirements, plaintiff must also demonstrate that the Department's action caused plaintiff a particularized injury. *Matter of Lappie,* 377 A.2d 441, 442–43 (Me.1977); *see Singal v. City of Bangor,* 440 A.2d 1048, 1051 (Me.1982). The purposes of the Certificate of Need Act include regulation of the distribution of health care facilities so as to avoid unnecessary duplication and wasted capital expenditures. 22 M.R.S.A. §§ 302(2)(C), (D). The Act reflects a legislative purpose to regulate competitive interests, and thus an injured competitor has standing to require compliance with the law. *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 155–57, 90 S.Ct. 827, 830–31, 25 L.Ed.2d 184 (1970); *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 5–6, 88 S.Ct. 651, 654, 19 L.Ed.2d 787 (1968). As an existing nursing home in the Belfast area, Bradbury Memorial suffered a direct and particularized injury when the Department issued a CON for the construction of 70 additional beds in the same city to a competitor. *See Hollingsworth v. Harris,* 608 F.2d 1026, 1028 (5th Cir.1979). Thus, plaintiff has standing to appeal the Department's refusal to reconsider its issuance of a CON to Tall Pines.

That standing extends to all the issues that plaintiff raises in its assault upon the CON issued to Tall Pines. As we said in *Matter of Lappie,* 377 A.2d at 443:

> [O]nce a person has standing as a 'person aggrieved' by virtue of a particularized injury resulting from an administrative order, such person may raise any and all issues which affect the validity of the order, without regard to whether such issue specifically relates to such injury.

Even if plaintiff's success on an issue might lead to an ultimate result that another applicant than Tall Pines receives the

CON for the same 70 additional beds, it is not for us to speculate that plaintiff would be no better off from having defeated the Tall Pines project in court. Bradbury Memorial, being directly aggrieved by the Department's issuance of a CON to Tall Pines, is restricted in no way in its attack upon the validity of that administrative action.

## II. *Direct Review of the Department's Decision*

■ On its appeal before this court, Bradbury Memorial contends that the Department committed a number of fatal errors of law in granting a CON to Tall Pines. We review that administrative action directly for any legal error, without regard to the decision of the Superior Court, which acted only as an intermediate appellate tribunal. *See Williams v. Williams*, 444 A.2d 977, 978 (Me.1982) ("When the Superior Court acts as an intermediate appellate tribunal, we traditionally review directly the initial determination of the adjudicatory body below rather than the decision of the Superior Court"). *See also Lundrigan v. Maine Labor Relations Board*, 482 A.2d 834 (Me.1984); *Council 74, AFSCME v. Maine State Employees Association*, 476 A.2d 699, 703 (Me.1984). On making such a direct review, we find no merit in any of plaintiff's claims of error in the Department's decision.

### A. *Issuance of the CON to Tall Pines on a date beyond the 150-day statutory review period*

■ At the heart of Bradbury Memorial's appeal is its assertion that the CON issued to Tall Pines is invalid because the Department failed to act on any of the competing applications until after the expiration of the 150-day review period set forth in 22 M.R.S.A. § 307(3).[1] Although the statutory review period for the Belfast applications ended on March 13, 1983, the Department reached its decision on March 25, 1983, and announced it on April 4, 1983.

■ Plaintiff contends that on March 13, 1983, when the 150-day period expired, all pending applications including that of Tall Pines were automatically denied. That "pocket veto" or "automatic denial" consequence plaintiff claims to result—not from section 307(3) of the Certificate of Need Act—but from a provision of the Department's Procedures Manual of 1978, which reads:

Failure of the Department to provide written notification of its decision to the applicant within the Department's deadlines shall have the effect of a decision to deny issuance of a certificate of need.

Plaintiff would have us treat that manual provision as a rule within the meaning of 22 M.R.S.A. § 312 (Supp.1984–1985), which authorized the Department to "adopt any rules, regulations, standards, criteria or plans that may be necessary to carry out the provisions and purposes of [the Maine Certificate of Need] Act." After March 13, 1983, by plaintiff's argument, no applications remained pending before the Department, and in effect the Department was ousted of jurisdiction to go any further in selecting a developer to build the 70 additional nursing home beds needed in Belfast. We are willing to treat the manual provision as an administrative rule; however, we refuse to give the manual provision a reading with such a Draconian consequence.

■ Neither the language nor the context of the manual provision requires it to be interpreted to oust the Department of

---

1. Section 307(3) of the Maine Certificate of Need Act provides in full:

**3. Reviews.** To the extent practicable, a review shall be completed and the department shall make its decision within 90 days after the date of notification under subsection 1. The department, after consulting with the Health Systems Agency, shall establish criteria for determining when it is not practicable to complete a review within 90 days. Whenever it is not practicable to complete a review within 90 days, the department, after consultation with the Health Systems Agency, may extend the review period up to an additional 60 days. Any review period may be extended with the written consent of the applicant.

jurisdiction on the very moment the 150-day deadline is reached. We read the "shall have the effect" language to mean simply that any applicant who has not by then received notice of a decision of the Department is in a position to petition the Department for reconsideration under section 310 of the Certificate of Need Act, in the same manner and to the same extent as a party whose application has been expressly denied. The Department's final action on the request for reconsideration is then subject to review in the Superior Court under section 311. *See Hale v. Petit*, 438 A.2d at 230. This reading is consistent with the general rule of the Administrative Procedures Act that "any person aggrieved by the failure or refusal of an agency to act shall be entitled to judicial review thereof in the Superior Court." 5 M.R.S.A. § 11001(2) (1979); *see also id.*, § 11002(3). In the Superior Court the available relief "include[s] an order requiring the agency to make a decision within a time certain." *Id.*, § 11001(2).

■ We are reinforced in our reading of the manual provision by the fact that the interpretation urged upon us by Bradbury Memorial would render the provision invalid. If that regulation promulgated by an administrative agency were interpreted and applied to the circumstances of this case in a way to bar the Department absolutely from granting the only viable application that remained before it at the time the 150-day deadline arrived, that provision would not be a valid exercise of the administrative rulemaking authority granted by section 312. To repeat, section 312 permits only rules or regulations "necessary to carry out the provisions and purposes of this Act." For several reasons, a rule that automatically denied an application after a given period of time would be invalid.

First, section 307(3), providing the 150-day period of review, does not contemplate that the time limit would be "jurisdictional" in such a way that a third party to the application process, such as Bradbury Memorial, could insist that the entire proceeding before the Department was at an end and that any further action on any pending application was void and of no effect. The section 307(3) review period was created for the benefit of the applicants before the Department; that fact is demonstrated by the explicit provision that "[a]ny review period may be extended by the written consent of the applicant." Neither Tall Pines nor Northport, the only applicants remaining before the Department on March 13, 1984, objected to the Department's three-week delay in announcing its decision. Thus, the manual provision, if interpreted so as to cut off consideration of pending applications, goes beyond any purpose of the controlling statute, section 307(3), and so is invalid under section 312.

■ Second, the 150-day review period of section 307(3)—along with the time limits for acting upon applications imposed upon the Maine Health Systems Agency by sections 306(3)(B) and 307(4)—is directory and not mandatory. The California Supreme Court, in a situation similar to the one presented here, has "held that, generally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, *unless a contrary intent is clearly expressed.*" (Emphasis added) *Edwards v. Steele*, 25 Cal.3d 406, 409, 158 Cal.Rptr. 662, 665, 599 P.2d 1365, 1368 (1979) (San Francisco ordinance requiring Board of Permit Appeals to hold hearing within 15 days and act thereon within 40 days after appeal, directory and not mandatory or jurisdictional). The California holding represents the rule elsewhere as well. *See* 73 Am.Jur.2d *Statutes* § 18, at 279 (1974) (provisions of "statutes which direct the doing of a thing within a certain time without any negative words restraining the doing of it afterward" "are not regarded as of the essence, but are regarded as directory merely"). Looking at the Certificate of Need Act, we find no clearly expressed intent to make the time periods mandatory or jurisdictional. Those time periods of the Certificate of Need Act serve the hortatory

purpose of curbing bureaucratic delay, and give an applicant a legal basis for going to the Superior Court to get an order requiring the Department to render a decision. However, they do not mean that it is absolutely essential that the specified action take place within the set time periods else the action can never thereafter be taken. *Cf. S.D. Warren Co. v. Town of Gorham,* 138 Me. 294, 298–303, 25 A.2d 471, 472 (1942) (statute providing that tax "appeal shall be tried at the term to which the notice is returnable" is directory, not mandatory). The manual provision is invalid if it makes mandatory and jurisdictional what the legislature in section 307(3) wrote to be directory only.

■■■ Third, a "pocket veto" or "automatic denial" would violate the requirement of section 307(5–A)(B) that when the Department "make[s] a decision either to issue a certificate of need or to deny the application for a certificate of need [it] ... shall ... state the basis of the decision" and "[i]f the decision is not consistent with the recommendations of the Health Systems Agency ... [it] shall provide a detailed statement of the reasons for the inconsistency." This express prohibition on the Department's deciding adjudicated matters without giving its reasons is merely an explicit, specific application of the common law principle declared by us in *Gashgai v. Board of Registration in Medicine,* 390 A.2d 1080, 1085 (Me.1978), and the general requirement for findings of fact imposed by the Administrative Procedure Act, 5 M.R.S.A. § 9061 (1979). An administrative agency cannot validly adopt a rule that relieves it from making findings in an adjudicatory proceeding simply by declaring, in advance and for universal application, that a decision of automatic denial results from its inaction for 150 days. Subsections (3) and (5–A) of section 307 when read together forbid such a circumvention of deeply entrenched principles of administrative law.

■■■ Fourth, we believe it clear that the legislature in enacting the Maine Certificate of Need Act in 1978 had every desire for Maine to comply, on an ongoing basis, with the federal requirements for our state to receive federal funds for nursing homes and other health care projects. One declared purpose of the Act was to "[p]rovide for a certificate of need program which meets the requirements of the National Health Planning and Resources Development Act of 1974 ... *and its accompanying regulations.*" 22 M.R.S.A. § 302(2)(G) (1980) (emphasis added). As a result, a rule of the Maine agency at any time contravening (rather than meeting) a requirement of the federal regulations becomes *ipso facto* not "necessary to carry out the provisions and *purposes* of [the Maine Certificate of Need] Act" (emphasis added), and therefore invalid under the rulemaking authority granted by section 312. The manual provision, if interpreted and applied to declare that an absolute and automatic denial occurred on March 13, 1983, stands in direct contravention of the pertinent federal regulation then in effect, which reads as follows:

**§ 123.410 Procedures for State Agency Review.**

(a) The procedures adopted and *used* by a State Agency for conducting the reviews covered by this subpart *must include at least* the following:

•　　•　　•　　•　　•

(17) *Failure to act on an application within the required time.* ... A certificate of need ... may not be ... denied solely because the State Agency failed to reach a decision.

42 C.F.R. § 123.410(a)(17) (adopted eff. Oct. 21, 1980) (emphasis added). There is no reason to apply the manual provision in a way to flout the requirement of the federal regulation that the Maine legislature has declared binding.

Finally, the overall purpose of the Maine Certificate of Need Act must be emphasized. That overall purpose is the identification, and then the prompt-as-possible satisfaction, of the need for additional health

care services. The statutory time limits for administrative action are hortatory guidelines for accomplishing the desired goal of building health facilities promptly when and where needed. Once the Department concluded in early 1982 that the Belfast area needed up to 70 more nursing home beds, the Act set in motion an application and review process with the objective of meeting that need (in substantial part through federal funds) as soon as possible. In that statutory scheme, it would be a disservice to the drafters of section 307(3) to suggest that they intended that the procedural failure of the Department to meet the 150-day deadline—for whatever good reason—would have the fatal consequence of requiring that the whole process be started and gone through all over again. The construction urged by plaintiff would stand the 150-day review period on its head; instead of being a mechanism for expediting the provision of needed health services, that statutory time provision would become the cause of lengthy delays that bore no relation to the merits of the competing applications.

In sum, the validity of the CON issued to Tall Pines was not affected by the Department's lateness in issuing its decision.

### B. Other alleged legal errors in the Department's issuance of the CON to Tall Pines

Plaintiff Bradbury Memorial asserts a variety of further errors of law by the Department of Human Services in issuing the Belfast CON to Tall Pines. We have reviewed all of plaintiff's contentions and find that none are fatal to the validity of Tall Pines' CON.

■■■ Bradbury Memorial first argues that Tall Pines' failure to submit a completed CON application by the August 10, 1982, deadline set by the Department's regulations precluded the Department from placing Tall Pines in the same 150-day review cycle as BMA. That argument is quickly answered. In fact, none of the three applications was complete by the August dead-

line, and thus no party was unduly prejudiced by the Department's extension of the filing deadline to October 8. That extension was the only practical alternative available to the Department in light of the three incomplete applications that it had before it on August 10. No party objected to the granting of the extension when the Department took that action on September 3. One can conclude that each applicant thought the extension of time to be in its own best interest.

We note also that even if Tall Pines had been placed in a later review cycle than BMA and Northport, Tall Pines would have still been awarded the CON. BMA withdrew its application, and Northport's application came under a disqualifying cloud, for reasons unrelated to Tall Pines' application. Those other proposals dropped out of competition for the Belfast CON from causes unrelated to the relative merits of the three original applications. Thus, the extension of the deadline for filing applications from August 10 until October 3 in no way prejudiced any of the applicants and does not require that we reverse the Department's decision.

Bradbury Memorial next contends that the Department wrongfully induced BMA to withdraw its application. The record contains no support for this contention. Plaintiff utterly fails to show that BMA's withdrawal from the competition was anything but voluntary action on its part. After BMA had completed its application, some persons within the Department, and in turn BMA, became concerned that if BMA purchased Bradbury Memorial, a "related party" problem might exist and could jeopardize Medicaid funding for the BMA nursing home. BMA discussed the alternatives open to it with middle-level staff employees of the Bureau of Health Planning, but never requested a final determination by the Department of the related party issue. After the discussions with Bureau employees, BMA voluntarily withdrew its application. Given the Medicaid regulations, BMA may well have decided to pur-

sue other options. In any event, nothing in this record would justify a conclusion that the Department acted improperly or that BMA did not decide to withdraw of its own free will.

 As a further claim of error, Bradbury Memorial charges that the Department failed to give reasons for its decision to depart from the recommendation of the MHSA (that BMA be awarded the Belfast CON) as required under 22 M.R.S.A. § 307(5–A)(B) (Supp. 1984–1985). The statutory requirement for an explanation of any inconsistency between the Department's decision and the MHSA's recommendation protects against arbitrary administrative action. *Hale v. Petit*, 438 A.2d at 233. It is true that the letter granting the CON to Tall Pines was less than a full explanation of the Department's decision; however, the Department's response to plaintiff's reconsideration request, the final agency action in this matter, *see id.*, at 229–30, made up for that deficiency. Although it would have been better practice for the same letter issuing the CON to Tall Pines to have stated the reasons for rejecting the recommendation of the MHSA, the Department's statement of its reasons at any time before its decision became final fully satisfied its statutory obligation.

 Finally, Bradbury Memorial contends that the Department failed to make the required findings of fact in awarding the CON to Tall Pines and that the record as a whole contains insufficient evidence to support those findings. Contrary to that contention, a review of the record on appeal demonstrates that the Department possessed adequate information upon which to base its decision, including the need for 70 additional nursing home beds in Belfast, and, in its response to plaintiff's request for reconsideration, fully explained its reasons for awarding the CON to Tall Pines. We find no deficiency or error in the Department's findings of fact.

None of plaintiff's other alleged errors of law on the part of the Department merit discussion.

### III. *Superior Court's Refusal to Take Additional Evidence*

 In reviewing agency action the Superior Court may take additional evidence, M.R.Civ.P. 80C(e), or order the taking of additional evidence by the agency if 1) the additional evidence is material *and* 2) such evidence could not have been presented before the agency. 5 M.R.S.A. § 11006(1)(B) (1979). Bradbury Memorial asserts that the Superior Court should either have taken additional evidence in ruling on its appeal of the Department's decision or have ordered the Department to take such evidence. We have reviewed the Superior Court's denial of these demands and find that plaintiff failed to show any valid reason why its request should be granted. In addition, the plaintiff did not take advantage of the opportunity to submit additional evidence to the Department at the time of its petition for reconsideration. Thus, Bradbury Memorial did not meet either prong of the test established by section 11006(1)(B), and the Superior Court's decision finding the record sufficient was not error.

Having reviewed all of the plaintiff's points on appeal, we find no error in the actions of the Department, or in the proceedings before the Superior Court, that requires us to order the Department to begin anew the time-consuming process of accepting applications for the certificate of need for nursing home beds in Belfast, or to reconsider its issuance of the certificate of need to Tall Pines Manor Associates.

The entry is:

Judgment affirmed.

ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ., concurring.

WATHEN, Justice, dissenting.

I strongly disagree with the Court's construction of 22 M.R.S.A. § 307(3) and the Procedures Manual. I must respectfully

dissent. If words have any general and accepted meaning, the construction adopted by the Court has to be in error. The statute and the rule in issue are as follows:

> To the extent practicable, a review shall be completed and the department shall make its decision within 90 days after the date of notification under subsection 1. The department, after consulting with the Health Systems Agency, shall establish criteria for determining when it is not practicable to complete a review within 90 days. Whenever it is not practicable to complete a review within 90 days, the department, after consultation with the Health Systems Agency, may extend the review period up to an additional 60 days. Any review period may be extended with the written consent of the applicant.

22 M.R.S.A. § 307(3).

> Failure of the Department to provide written notification of its decision to the applicant within the Department's deadlines shall have the effect of a decision to deny issuance of a certificate of need. [42 CFR 123.407(A)–(15)] Failures to provide notice resulting from oversight, illness or storms shall be corrected within a period of time not exceeding ten (10) days through providing either a written denial of the Application or a certificate of need.

Procedures Manual.

The Procedures Manual leaves no room for interpretation. It clearly prescribes the sanction for departmental inaction—denial. It was developed in apparent response to a federal regulation, 42 C.F.R. § 123.-407(a)(15) (1979), which provided with equal clarity that a CON "shall not be issued" if a state agency failed to reach a decision within its deadline. Faced with unambiguous language, the Court first finds a "Draconian consequence" and then adopts an interpretation at odds with the language. In recognition of the violence which has been done to the language, the justification is offered that any other interpretation would render the provision invalid. The

interpretative technique employed by the Court is appropriate only if it is first concluded that the Procedures Manual will permit two reasonable alternative interpretations. In my judgment the Court's interpretation is neither reasonable nor is it required in order to avoid a declaration of invalidity.

The reasons offered to support the proposition that "a rule that automatically denied an application after a given period of time would be invalid" are not persuasive. First it is asserted that section 307(3) does not contemplate that the time limit would be jurisdictional and that the statutory language is directory and not mandatory. It is true that section 307(3) does not contain negative words prohibiting the completion of review after the 150-day deadline. The structure of the review period, however, does imply the negative. The first review period applies to all reviews and is 90 days. The consequence of failing to meet the first deadline is specifically provided for, *i.e.*, a 60 day extension may be granted by the Department. The language authorizing the second review period is significant in that it confines the scope of the Department's discretion to granting an extension of *"up to"* 60 days. Clearly the negative implication has been supplied by the Legislature and the Procedures Manual merely provides the details.

The Court's conclusion that the "pocket veto" would permit the Department to avoid the statutory requirement for explaining its decision (section 307(5–A)) is equally flawed. The Department is not required to explain its decision until it takes final agency action. *Hale v. Petit,* 438 A.2d 226, 229–230 (Me.1981). The decision of the Department does not become final agency action until "the department has taken final action on a request for reconsideration under section 310." 22 M.R.S.A. § 311. By allowing the review period to expire, the Department does not shield itself from a request for reconsideration nor does it avoid the requirement of explaining its decision pursuant to section

307(5–A) once such a request is made. The Court acknowledges the foregoing features of final agency action elsewhere in its opinion but ignores those same features in this context.

The remaining reason advanced by the Court results from an unorthodox technique of interpretation. The Department and Tall Pines argue, and the Superior Court ruled, that the Procedures Manual had been preempted and superceded by the underlying federal regulation which was changed after the Manual was adopted. In an effort to avoid conflict between the Procedures Manual and the new federal regulation, the Superior Court chose to disregard the Manual but warned of stricter interpretations if the Manual remained unchanged in the future. Although the federal government has the power to condition financial grants to the states on fulfillment of federally prescribed requirements, the National Health Planning and Resources Development Act of 1974, 42 U.S.C. §§ 300k *et seq.*, under which the regulations in question were promulgated, does not establish a mandatory state program. The applicable federal regulations do not automatically supersede contrary state law but instead are conditions which states must conform to if they are to receive federal funds for state health programs. Clearly, if Maine's Procedures Manual does not follow the applicable federal regulations, amendment of the Manual is the appropriate remedy. As long as the Manual remains in effect, the Department should be obligated to abide by its terms.

The Court stands the preemption argument on its head and applies a doctrine which could only be described as "auto-preemption." Relying on a general statement of purpose the Court declares all rules in contravention of federal regulations to be invalid, *ipso facto*. Not only is there no federal preemption under such circumstances, it should be noted that the 1980 federal regulation eliminating automatic denial, created a grace period until January 1982 for the states to adopt the change.

*See* 42 U.S.C.S. § 300m–6 (effective date for § 300n–1(b)(12)). Presumably the Court holds that such a grace period is unnecessary since the change is produced automatically, without action by state officials.

Finally, I do not agree with the observations concerning the overall purpose of the Maine Certificate of Need Act and the impact of these observations on the issue before us. The Court finds the review process to be designed for the sole purpose of producing a facility "as soon as possible." I would argue that the review process is designed to insure that the proposals under consideration, including financial projections and forecasts, are contemporaneous. Otherwise a direct competitive comparison from one proposal to another would be difficult, if not impossible. Beyond that, the 150 day time limit insures that the decision will be based on reasonably current information. Obviously, the goal is to secure for the public the most financially feasible project. There is nothing in the record before us which suggests that the public will be better served by the immediate construction of the Tall Pines project, as opposed to the project which would result from a new round of competitive review. I would refrain from making such a judgment. The limited function of the Court should be to insure procedural regularity. I would reverse the decision to issue the Certificate of Need.