## COUNCIL 74, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES

### v.

## MAINE STATE EMPLOYEES ASSOCIATION.

Supreme Judicial Court of Maine.

Argued Oct. 17, 1983.

Decided May 8, 1984.

Sunenblick, Fontaine & Reben, Stephen Sunenblick (orally) Portland, for plaintiff.

Shawn C. Keenan, Maine State Employees Association (orally), Wayne W. Whitney, Maine Labor Relations Bd., Augusta, for defendant.

Frederick G. Taintor, Lewiston, for City of Lewiston.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

GLASSMAN, Justice.

The Maine State Employees Association (MSEA) appeals from an order of the Superior Court, Kennebec County, reversing a decision of the Maine Labor Relations Board (MLRB) which set aside the results of a decertification election and ordered a new election. We find the Superior Court erred in reversing the Board's order and vacate the judgment of the Superior Court.

## I.

Since 1972, the American Federation of State, County, and Municipal Employees (AFSCME) represented the employees of the City of Lewiston and the Lewiston School Department. In October 1982, the MSEA petitioned the MLRB to hold a decertification election pursuant to 26 M.R.S.A. § 967(2), at which the city employees would elect either AFSCME or MSEA to serve thereafter as their agent in collective bargaining with their employer.

MLRB Rule 3.02 required the employer to furnish, in preparation for this election, the Executive Director of the Board and both unions with a list of the names and addresses of employees in the bargaining unit, so that a voting list could be prepared. The list which the employer compiled included the names of ten employees later determined to be ineligible to vote because they had been employed by the city for less than six months, and thus did not fit the statutory definition of a "public employee" set forth in 26 M.R.S.A. § 962(6)(F).[1] Prior to the election, AFSCME challenged, pursuant to Board Rule 3.06, the ballots of three employees it believed to be ineligible to vote. Unchallenged votes were later found to have been cast by an additional seven ineligible employees. Nothing in the record shows MSEA, prior to the election, was aware that ineligible employees were included in the list.

The MLRB conducted the decertification election on November 22, 1982. AFSCME won the election, receiving 62 votes to MSEA's 53. After the election, MSEA filed with the Board a prohibited practices complaint in accordance with 26 M.R.S.A. § 968(5)(B),[2] alleging that (1) the employer had committed a prohibited practice in violation of 26 M.R.S.A. § 964(1)(A)[3] by submitting to the MLRB a voting list including

1. 26 M.R.S.A. § 962(6)(F) (1974) provides:
   6. *Public Employee.* "Public employee" means any employee of a public employer, except any person:
   ....
   F. Who has been employed less than 6 months.

2. In pertinent part, 26 M.R.S.A. § 968(5)(B) (Supp.1983–1984), provides:
   Any public employer, any public employee, any public employee organization or any bargaining agent which believes that any person, any public employer, any public employee, any public employee organization or any bargaining agent has engaged in or is engaging in any such prohibited practice may file a complaint with the executive director of the board stating the charges in that regard.

3. 26 M.R.S.A. § 964(1)(A) (1974) provides:
   1. *Public employer prohibitions.* Public employers, their representatives and their agents are prohibited from:
   A. Interfering with, restraining or coercing employees in the exercise of the rights guaranteed in section 963.
   Section 963 provides:
   No one shall directly or indirectly interfere with, intimidate, restrain, coerce or discriminate against public employees or a group of public employees in the free exercise of their rights, hereby given, voluntarily to join, form and participate in the activities of organizations of their own choosing for the purposes of representation and collective bargaining, or in the free exercise of any other right under this chapter.

the names of probationary employees not eligible to vote in the election; and (2) AFSCME had committed a prohibited practice in violation of 26 M.R.S.A. § 964(2)(A),[4] by making misleading statements to employees during the election campaign and by removing from union office two employees who were leading the MSEA decertification campaign.

The MLRB subsequently held a hearing at which evidence was taken on all issues raised in MSEA's complaint. The Board's decision and order, dated February 23, 1983, found the employer had violated 26 M.R.S.A. § 964(1)(A) by including the names of ineligible employees in the voting list, and the votes cast by the ineligible employees were sufficient in number to have affected the outcome of the election. The Board ordered the election set aside and a new election held.[5] Since the Board viewed this finding as dispositive of the case, it did not rule on MSEA's charges that AFSCME had engaged in prohibited practices during the campaign.

On March 8, 1983, AFSCME sought review of the Board's decision, as provided for in 26 M.R.S.A. § 968(5)(F), by filing a complaint in the Superior Court pursuant to M.R.Civ.P. 80C. AFSCME's complaint did not challenge the Board's findings that ineligible employees were included in the voting list, or that their votes might have affected the outcome of the election; AFSCME contended only that the Board erred as a matter of law by permitting MSEA to file a post-election challenge to voter eligibility. On June 15, 1983, the Superior Court reversed the decision of the MLRB and remanded the case to the Board for findings on the previously undecided issue of AFSCME's alleged prohibited practices. The MLRB has not acted on this remand order.

MSEA appealed the Superior Court's decision, asking us to assert appellate jurisdiction over the case, pursuant to 26 M.R.S.A. § 968(5)(F). Thereafter, AFSCME brought a motion to dismiss the appeal on the ground that a final judgment had not been rendered by the Superior Court. We ordered the parties to brief and argue the final judgment issue in conjunction with the merits of the appeal.

## II.

The Superior Court, having decided that the Board could not properly hear MSEA's post-election challenges to voter eligibility, remanded the case to the Board for findings on the issue of the prohibited practices allegations against AFSCME. AFSCME contends that our "final judgment rule" precludes our present review of the Superior Court's decision.

We have previously noted that this court "will decline to review a case before it 'unless the appeal is from a "final judgment," except when otherwise specifically authorized.'" *Maine Central Railroad Co. v. Bangor & Aroostook Railroad Co.*, 395 A.2d 1107, 1112 (Me.1978), quoting *Northeast Investment Co. v. Leisure Living Communities, Inc.*, 351 A.2d 845, 848 (Me.1976). In the present case, we find the appeal to be specifically authorized by statute.

Title 26 M.R.S.A. § 968(5)(F) (Supp.1983–1984) creates the mechanism for judicial review of MLRB decisions on prohibited practices complaints. In pertinent part, section 968(5)(F) provides: "Any appeal [from a Superior Court order enforcing, modifying, enforcing as so modified or setting aside in whole or in part the decision of the board on a prohibited practices com-

---

**4.** 26 M.R.S.A. § 964(2)(A) (1974) provides:

    **2.** *Public employee prohibitions.* Public employees, public employee organizations, their agents, members and bargaining agents are prohibited from:

    A. Interfering with, restraining or coercing employees in the exercise of the rights guaranteed in section 963 or a public employer in

the selection of his representative for purposes of collective bargaining or the adjustment of grievances.

**5.** Pursuant to the Board's February 23 order, a second election was held on March 18, 1983. MSEA won this election by a vote of 63 to 53.

plaint] to the law court shall be the same as an appeal from an interlocutory order under section 6." Section 6 provides:

Any party may appeal to the law court from an interlocutory order granting or denying a preliminary injunction in a case involving or growing out of a labor dispute .... The law court shall affirm, modify or set aside the order with the greatest possible expedition and shall give such proceedings precedence over all other matters, except older matters of the same character.

26 M.R.S.A. § 6 (1974).

AFSCME argues that the incorporation of section 6 into section 968(5)(F) contemplates an adoption only of the expedited appellate procedure described in section 6, once the Board has resolved all issues and they have been finally reviewed by the Superior Court. MSEA contends that section 968(5)(F) allows this court to review, in the manner provided in section 6, all Superior Court decisions on prohibited practices complaints even where, as here, unresolved issues remain for the Board's determination.

A review of the legislative history of section 968 reveals an apparent legislative intent to expedite judicial review of MLRB decisions. From 1969, when section 968 was first enacted, until 1971, decisions of the Commissioner of Labor and Industry were reviewable by the Superior Court, and ultimately by the Law Court, in the manner specified in section 972. Section 972 gave the Superior Court the authority to "affirm, reverse or modify any ... binding determination or decision [of the commissioner] based upon an erroneous ruling or finding of law," and allowed for appeal to the Law Court "as in any civil action."

In 1971, the legislature created a special procedure for appellate review of decisions on prohibited practices complaints brought under section 968(5). P.L.1971, ch. 609, § 9 repealed and replaced section 968, retaining the parties' right to appeal as provided in section 972 "as in any civil action" for grievances brought in unit determination

and election disputes, but creating a different method of appeal to the Law Court for prohibited practices cases, "the same as in appeals in actions in which equitable relief is sought and the law court may, after consideration, reverse or modify any decree ... made by a [Superior Court] justice based upon erroneous ruling or finding of law."

In 1973, the legislature repealed and replaced section 968(5)(F) in An Act to Clarify and Improve the Enforcement of Decisions of the Public Employees Labor Relations Board. P.L.1973, ch. 533, § 2. The new statute expedites each step of the appellate process for prohibited practices complaints. Appeal to the Law Court is directed to be "the same as an appeal from an interlocutory order under section 6."

In the 1973 revision of section 968(5)(F), we discern a legislative intent to facilitate and hasten the resolution of prohibited practices cases by giving this court an avenue for early adjudication of disputed issues. In *Sanford Highway Unit of Local 481 v. Town of Sanford*, 411 A.2d 1010, 1014 (Me.1980), we recognized:

The Legislature has devoted considerable time and energy to the subject of public employee labor relations in the past decade and has enacted a comprehensive and integrated set of statutes to establish Maine's public policy in the field of governmental employee relations. The speedy procedures for judicial review under § 968(5)(F) ... are crucial to the maintenance of stability and harmony in public employee relations, particularly when, as under the Maine statutes, self-help remedies for the parties are very limited, or prohibited.

*See also Sanford Teachers Association v. Sanford School Committee*, 409 A.2d 244, 246 (Me.1979).

■ In accord with this legislative intent, we address the merits of this appeal, and review the issue presented to the MLRB.

## III.

■ In its Rule 80C complaint, AFSCME alleged the Board had erred as a matter of law by allowing MSEA to make a post-election challenge to the eligibility of voters. The Superior Court, apparently accepting AFSCME's characterization of the case, held that Rule 3.06 [6] required each party to the election to review the list furnished by the employer for accuracy as to the eligibility of voters and, absent suppression of facts by AFSCME concerning voter eligibility, the election could not be challenged by MSEA. In fact, the Superior Court misconceived the nature of the case presented to the Board. MSEA's complaint did not purport to challenge the ballots of individual voters. Rather, it contended the employer had committed a prohibited practice by violating Rule 3.02(B) of the Board's election rules requiring the employer to provide accurate voting lists prior to the election.[7] The Superior Court's decision, therefore, does not address the question whether the Board erred in its disposition of MSEA's prohibited practice complaint. It is proper for this court, however, to review the decision of the MLRB rather than of the Superior Court which was acting in direct review of the action of the Board. *City of Bangor v. American Federation of State, County, and Municipal Employees, Council 74,* 449 A.2d 1129, 1133–34 (Me. 1982); *Driscoll v. Gheewalla,* 441 A.2d 1023, 1026 (Me.1982).

The prohibited practice complaint filed by MSEA with the Board pursuant to section 968(5)(F), alleged:

The employers failed to provide proper lists of employees in the appropriate bargaining unit and therefore eligible to vote as required under MLRB Rule 3.02(B), in that the lists provided included a substantial number of employees who on November 22, 1982 had been employed by the employers for less than 6 months and who were therefore not in the appropriate bargaining unit and were ineligible to vote. The number of such employees who voted was sufficient to affect the outcome of the election. The employers thereby impermissibly interfered with the laboratory conditions of the election in violation of Section 964(1)(A) of the MPELRA.

In its decision, the Board recognized that its Rule 3.02(B) imposes on employers an obligation to furnish voting lists of bargaining unit employees prior to the election. After consideration of the evidence presented at the hearing, the Board found: "By including a sufficient number of non-bargaining unit employees on the lists to affect the outcome of the election, contrary to the rule that only bargaining unit employees be included in the lists, the City did not substantially comply with Rule 3.02(B)." The Board concluded such lack of compliance with the rule also violated section 963, which guarantees the right of public employees to join labor organizations, and section 964(1)(A), which prohibits public employers from "interfering with, restraining or coercing employees in the

---

**6.** MLRB Rule 3.06(A) deals with challenges of any prospective voters.

**7.** In pertinent part, Rule 3.02 provides:
*Voter Eligibility and Eligibility List.* (A) The employees eligible to vote shall be those who were employed on the last pay date prior to the filing of the petition and who remain on the payroll on the date of the election, and meet the requirements set forth in Title 26, M.R.S.A., § 962, ¶ 6, defining "public employee" ....
(B) At least ten (10) working days prior to the election or mailing of ballots, the employer shall furnish, to each labor organization which is a party to the proceeding and to the

Executive Director, a list of the names and addresses of the employees in the appropriate unit who are on the payroll on the pay period prior to the setting of the election by the Executive Director and who are also on the payroll at the time of the submission of the list.
Rule 3.02(B) is a codification of the National Labor Relations Board's *Excelsior* rule. *Excelsior Underwear Inc.,* 156 N.L.R.B. 1236 (1966). The validity of the *Excelsior* rule and the power of the NLRB to enforce it have been upheld by the United States Supreme Court. *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969).

exercise of the rights guaranteed in Section 963." AFSCME has not contested, either in the Superior Court or in this court, the Board's finding that the employer committed a prohibited practice.

After the Board determined the employer had violated section 964(1)(A), it ordered the November 22 election results to be set aside and a new election held. We find the Board's decision to order a new election was within its statutory authority to take "affirmative action" to effectuate the policies of the labor relations law when it found the employer to have committed a prohibited practice. 26 M.R.S.A. § 968(5)(C). "The Board has broad discretion in fashioning appropriate relief for the employer's prohibited practices ...." *City of Bangor,* 449 A.2d at 1136. "A properly designed remedial order seeks 'a restoration of the situation, as nearly as possible, to that which would have obtained' but for the unfair labor practice." *Caribou School Department v. Caribou Teachers Association,* 402 A.2d 1279, 1284 (Me. 1979), quoting *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941).

■ In *M.S.A.D. No. 43 Teachers' Association v. M.S.A.D. No. 43 Board of Directors,* 432 A.2d 395, 398 (Me.1981), we held:

Once the Board finds a challenged practice to be prohibited, the determination of what affirmative relief, if any, will effectuate the policies of our labor relations law is, in the first instance, committed to the informed discretion of the Board.... It is not for us to interfere with the remedy chosen by the Board where the reasons articulated for it in the Board's decision clearly show it to be within the statutory powers of the Board.

In the present case we discern no abuse of discretion in the Board's exercise of its statutory authority under section 968(5)(C). Therefore, we affirm the Board's decision setting aside the November 22 election results and ordering a new election.

The entry is:

Judgment vacated.

Remanded to the Superior Court for entry of judgment affirming the decision of the Maine Labor Relations Board.

All concurring.