1997 ME 17

**BIDDEFORD BOARD OF EDUCATION, et al.**

v.

**BIDDEFORD TEACHERS ASSOCIATION, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 8, 1997.

Decided Jan. 29, 1997.

---

M. Wayne Jacobs (orally), Maine Labor Relations Board, Augusta, John G. Richardson (orally), Daniel R. Felkel, Troubh, Heisler & Piampiano, P.A., Portland, for Biddeford Teachers Association.

Harry B. Center, II (orally), Smith, Elliott, Smith & Garmey, P.A., Saco, for Board of Education.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

[¶ 1] The Biddeford Teachers Association and the Maine Labor Relations Board (MLRB) appeal from the judgment entered in the Superior Court (York County, *Saufley, J.*) which vacated the decision of the MLRB finding that a tentative agreement between the Biddeford Teachers Association and the Biddeford Board of Education had been ratified. Although we disagree with the rationale of the Superior Court, we affirm its decision.

### Background

[¶ 2] In July of 1995, the Biddeford Teachers Association filed a complaint with the MLRB alleging that the Biddeford Board of Education and its chair, Biddeford Mayor James Grattelo, violated the Municipal Public Employees Labor Relations Law[1]

1. Title 26 M.R.S.A. §§ 961—974 (1988 and Supp. 1996).

(MPELRL) by not ratifying and executing a tentative agreement endorsed by the Teachers Association and the negotiating team appointed by the Board of Education. The Teachers Association alleged that Mayor Grattelo, who serves as the *ex officio* chair of the Board of Education, violated the City Charter and state law when he vetoed the tentative agreement after it had been approved by the Board of Education. The MLRB, concluding that the Mayor's veto violated both the Charter and state law, ordered the Board of Education to ratify the tentative agreement and comply with its terms. The Mayor and Board of Education appealed the decision of the MLRB pursuant to M.R.Civ.P. 80C. Although the Superior Court agreed that the mayor's veto violated both the Charter and state law, the Superior Court held that the Board of Education had not ratified the tentative agreement because the ratification procedure was part of a larger process, including the veto of the contract, that was illegal. The court remanded to the MLRB for further proceedings. The Teachers Association and the MLRB appeal from that judgment.[2]

[¶ 3] The Biddeford Board of Education consists of eight members: seven chosen by the City's electorate; and the Mayor, who is *ex officio* chair of the Board.[3] On December 13, 1993, the Board of Education met to adopt rules of procedure, adopted *Robert's Rules of Order,* and voted unanimously that the chair could vote only to break a tie. In addition, the Board voted unanimously to allow its chair veto power over expenditures and to provide that the chair's veto power could be overridden by a ⅔ vote of the Board membership.

[¶ 4] Also at the December 13, 1993, meeting, the Board appointed three of its members to serve as a negotiation team to meet with representatives of the Teachers Association, whose collective bargaining agreement was to expire in August of 1994. The Board's negotiating team and the Teachers Association's representatives met throughout 1994 and reached a tentative agreement in January of 1995. The proposed contract was to extend from September 1, 1994, through August 31, 1997, and included a wage increase of 2.5 percent for the first year of the contract, 3.4 percent for the second year, and 4 percent for the third year. The negotiators signed the tentative agreement.

[¶ 5] The Board of Education voted by a four to three vote to approve the tentative agreement. Grattelo vetoed the Board's approval, and the Board failed to override his veto. The Teachers Association subsequently filed a prohibited practices complaint with the MLRB, alleging, *inter alia,* that Grattelo's veto and the Board of Education's refusal to execute the tentative agreement were prohibited practices under 26 M.R.S.A. § 964(1)(A) and (E) (1988).[4] The Teachers Association also challenged Grattelo's direct contact with members of the bargaining unit and his opposition to the renewal of probationary teacher contracts,[5] and charged that the Board of Education had failed to clothe its negotiating team with sufficient authority

---

2. In addition, the Board of Education and Mayor Grattelo cross-appeal the MLRB's determination that the Mayor's veto of the tentative agreement was invalid. The MLRB also filed a motion to vacate a partial stay that had been imposed by the Superior Court. Our decision obviates the need to respond to the motion and the cross appeal separately.

3. Article Five of the Biddeford City Charter provides:

Sec. 1. The board of education shall be composed of the mayor and seven (7) members who shall hold office for a term of two (2) years until their successors are qualified.
Sec. 2. The mayor shall be ex officio chair of the board.

4. 26 M.R.S.A. § 964(1) (1988) provides, in pertinent part:

**Public employer prohibitions.** Public employers, their representatives and their agents are prohibited from:
A. Interfering with, restraining or coercing employees in the exercise of the rights guaranteed in section 963;
. . .
E. Refusing to bargain collectively with the bargaining agent of its employees as required by section 965.

5. The BTA alleged a violation of 26 M.R.S.A. § 964(A)(1) and (B) (1988). The MLRB did not find the Mayor or the Board of Education in violation of these provisions of the M.P.E.L.R.L., and the BTA does not challenge that finding.

to negotiate an agreement.[6] The MLRB found that Grattelo's veto and the Board's refusal to execute the tentative agreement constituted a refusal to bargain in violation of 26 M.R.S.A. § 964(1)(E). The MLRB ordered the Board of Education to sign the tentative agreement with the BTA and perform under its terms.

[¶ 6] The Superior Court affirmed the MLRB's determination that Grattelo's veto violated the City Charter and 20–A M.R.S.A. § 13201 (1993). The court held, however, that the MLRB erred in concluding that the Board of Education ratified the tentative agreement because that ratification was part of a procedural process, and once the MLRB had determined that the process was defective, the ratification could not stand by itself.

### Discussion

[¶ 7] When the Superior Court acts as an intermediate appellate court, we directly review the MLRB decision from which the appeal was taken. *Council 74, A.F.S.C.M.E. v. Maine State Employees Ass'n,* 476 A.2d 699, 703 (Me.1984). An order of the MLRB should be vacated "only if the record demonstrates that the agency abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *City of Bangor v. M.L.R.B.,* 658 A.2d 669, 671 (Me.1995).

### Approval of the Tentative Agreement

[¶ 8] As a threshold matter, we address the contention of the Board of Education that its four to three vote in favor of the tentative agreement was insufficient to constitute the majority needed for ratification. Article Five, Section One of the Biddeford City Charter provides that the Board of Education is to consist of eight members including the mayor, who is the *ex officio* chair of the Board. The City Charter empowers the Board to "meet for organization," which it did on December 13, 1993. At that meeting, the Board adopted *Robert's Rules of*

*Order* with the modification that its chair could vote only to break a tie and had veto power over expenditures.

[¶ 9] When the tentative agreement was presented for ratification, the Board voted four to three in favor of the agreement. Grattelo did not vote because he was not, pursuant to Board procedural rules, permitted to vote. *Robert's Rules of Order,* adopted by the Board, provides that "when the term majority vote is used without qualification—as in the case of the basic requirement—it means more than half of the votes cast by persons legally entitled to vote, excluding blanks or abstentions...." *Robert's Rules of Order* § 39 at 104 (1982). Grattelo was empowered to vote only in the event of a tie. The four to three vote of the Board was sufficient to approve the tentative agreement.

### Grattelo's Veto of the Approval

[¶ 10] At its organizational meeting, the Board had voted unanimously to grant its chair veto power over expenditures and to provide that the chair's veto could be overridden by a two-thirds majority of the Board. After the Board approved the tentative agreement, Grattelo exercised his veto, and the Board failed to override his veto. The ratification process adopted by the Board of Education was a three step process which we review in the light of the City Charter and the applicable statutes.

### City Charter

[¶ 11] Contrary to the MLRB's conclusion, the process does not conflict with the City Charter. The City Charter clearly provides that the Mayor is to serve as chair of the Board.[7] The Charter empowers the Board to adopt its own procedural rules,[8] and the Board is invested by the Charter with all necessary powers to manage the school de-

---

6. The MLRB found that the "Board team failed to give its negotiating team sufficient instruction respecting their latitude in negotiating wage instruments" in violation of the Board's duty to negotiate in good faith. The MLRB ordered the Board to clothe its bargaining team "with sufficient authority and/or bargaining instructions." The Board of Education does not challenge this finding of the MLRB.

7. Article 5, § 2 provides: "The mayor shall be ex officio chair of the board."

8. Article 5, § 3 provides: "The board of education shall meet for organization as soon as possible following the regular municipal election."

partment.[9] We will generally defer to the procedural rules adopted by agencies "[i]n the absence of a controlling agency rule or a contrary requirement of statutory and constitutional law." *Town of Wiscasset v. Board of Environmental Protection*, 471 A.2d 1045, 1048 (Me.1984). Municipalities have general power to enact measures to advance the powers granted to them by the legislature. "When no specific provision in a city charter exists in reference to the exercise of a municipal power, the city has all of the powers granted to towns or municipalities under the general law." 30–A M.R.S.A. § 2004 (1996). The Board of Education is empowered to adopt its own procedural rules, and the procedure they adopted does not conflict with the Charter. The practical effect of the Board's adopted procedure is not different than to require a majority vote of the eight member Board. *20–A M.R.S.A. § 13201.*

[¶ 12] The MLRB also found that the procedure adopted by the Board conflicted with 20–A M.R.S.A. § 13201 (1993),[10] that places statutory authority to set teacher salaries with school boards. We have previously rejected local legislative action that conflicted with a state legislative scheme clearly intended by the Legislature to occupy the regulated field. *See, e.g., Ullis v. Inhabitants of Town of Boothbay Harbor*, 459 A.2d 153, 159 (Me.1983) (rejecting local liquor ordinance that "works at cross purposes to the state's liquor licensing statutes, and therefore impermissibly conflicts with them"). Although in *Ullis* we held that "the legislature by clear implication has denied to municipalities the right to legislate in the area of liquor sales," we have not reached the same conclusion in the area of education. As we have stated, "[g]iven the broad delegation of home rule authority and the standard of review of municipal legislation set out in section 3001, we conclude that Title 20–A is not an exclusive legislative scheme that implicitly preempts municipal legislation on education matters in the absence of an express grant of authori-

ty." *School Comm. of Town of York v. Town of York*, 626 A.2d 935, 942 (Me.1993).[11]

[¶ 13] The approval process adopted by the Board of Education did not divest the Board of its statutorily delegated authority to control teachers' salaries. Grattelo was not acting as Mayor when he utilized his veto power; rather, he was acting as chair of the Board of Education, exercising the procedural power granted to him by that body, subject to its authority to override its chair's action by a two-thirds majority vote. The Board did not override its chair's action. The procedure adopted by the Board was proper. The MLRB erroneously concluded that the tentative agreement was ratified and erroneously ordered the Board to execute the tentative agreement.

The entry is:

Judgment affirmed.

---

**9.** Article 5, § 4 provides: "The Board of Education shall have all the powers and perform all the duties in regard to the care and management of the department of education."

**10.** 20–A M.R.S.A. § 13201 (1993) provides, in pertinent part:
The superintendent shall nominate all teachers, subject to such regulations governing salaries and the qualifications of teachers as the school board shall make. Upon the approval

of nominations, by the school board, the superintendent may employ teachers so nominated and approved for such terms as the superintendent may deem proper, subject to the approval of the school board.

**11.** 30–A M.R.S.A. § 3001(3) provides: "The Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law."