# CIRCUIT COURT OF ROCKINGHAM COUNTY

Mary K. Hutton

v.

Town of Elkton

January 16, 2002

Case Nos. (Law) CL01-12577 and CL01-12646

BY JUDGE JOHN J. MCGRATH, JR.

This case is before the Court on two Motions for Judgment challenging the issuance of $2,000,000.00 in general obligation bonds by a political subdivision of the Commonwealth, pursuant to §§ 15.2-2653 and 15.2-2654 of the Code of Virginia, and on one Cross-Claim seeking to validate those bonds pursuant to § 15.2-2651 of the Code. The case was heard before this Court on December 13, 2001.

On May 21, 2001, the Elkton Town Council voted four to two to authorize the issuance and sale of the bonds. The resolution was titled as follows: "Resolution of the Town Council of the Town of Elkton, Virginia, Declaring its Intention to Reimburse Itself from the Proceeds of a Financing for Acquisition and Development of Passive and Active Recreational Facilities and Future Needs of the Town." The Town concedes that this resolution was ineffective due to inadequate advertising of the public hearing required by the Public Finance Act of 1991, specifically § 15.2-2606 of the Code of Virginia.

On July 30, 2001, after a properly advertised public hearing, the Council voted three to two to authorize the bonds. At this time, Council consisted of

five regular voting members and one non-voting member, the mayor, who is defined in § 20 of the Elkton Code as a member of the Town Council, but only votes in the event of a tie pursuant to § 16 of the same code.

On September 17, 2001, the Council voted four to two to authorize the bonds. Two of the members who voted in favor of the bonds were named to fill vacancies on the Council and were not elected by popular vote. Similarly, two of the members who voted in favor of the bonds had not attended the public hearing on July 30, 2001.

At this point, it bears mentioning that § 15.2-2601 of the Public Finance Act provides, in part, that:

> The provisions of this chapter are in addition to the powers conferred by any charter or special or local act, and a locality may issue bonds, at the election of its governing body, under either (i) the provisions of this chapter without regard to the requirements, restrictions, or other provisions contained in any charter or local or special act applicable to the locality or (ii) the provisions of such charter or local or special act. ...

Thus, a locality may choose to issue bonds by following the procedures of the Public Finance Act or may choose instead to issue bonds by following the procedures mandated by their local charter. These are two parallel systems for issuing bonds, and the restrictions imposed by one system have no bearing on the other.

Here, the Town Council maintains that it was operating under the Public Finance Act, and not under the Elkton Charter. The Court finds no reason to dispute the Town's concession that it was operating under the Public Finance Act when it voted to issue bonds. Thus, the requirements for issuing bonds under § 22 of the Elkton Charter (the requirement of a two thirds supermajority vote before the council can contract a debt and the prohibition against acting on a resolution on the same day it is introduced) are inapplicable to the case at bar. Section 15.2-2607 of the Public Finance Act authorizes a local governing body to approve the issuance of bonds at the same meeting at which the bond resolution is introduced, and § 15.2-2636 requires merely a majority of all members elected to a governing body to vote in favor of a bond resolution.

There are essentially four issues before the Court:

(1) Is a Council member disqualified from voting on an particular issue when that council member was absent from a public hearing held to discuss that issue?

(2) When the Public Finance Act refers to "elected" Council members, does this term exclude members who are appointed to fill vacancies on the Council?

(3) Are non-voting members of the Council included as Council members when determining whether a vote has been carried by a majority of Council members?

(4) Was the purpose for issuing the bonds, as articulated by the Elkton Town Council, a permissible purpose under the Public Finance Act?

As to the first issue, § 15.2-2606 of the Public Finance Act requires the governing body to hold a public hearing on a bond issue before the governing body may vote to issue a bond. The Elkton Town Council held such a public hearing on July 30, 2001. Then on September 17, 2001, the Council voted for the second time, voting four to two to authorize the issuance and sale of bonds. Two of the Council members who voted in favor of the bonds had not attended the public hearing. The Plaintiff argues that the absence of these two members from the hearing should disqualify them from voting on that issue. Counsel for the Plaintiff was unable to identify any precedent for this notion, and this Court does not believe this is the law. For ages, members of all types of public bodies vote on issues and legislation when they have not been present at all or some of the hearings and debates which are normally conducted before voting on particular legislation. Therefore, the Court holds that Council members are not disqualified from voting on an issue simply because they failed to attend a public hearing on the issue.

As to the second issue, § 15.2-2636 of the Public Finance Act mandates that "[a]ny ordinance or resolution authorizing the issuance of bonds by a municipality must be passed by the recorded affirmative vote of a majority of all the members elected to its governing body." The Plaintiff argues that the four to two vote of September 17, 2001, was ineffective because two of the Council members voting with the majority were not elected in a popular vote but were instead chosen to fill vacancies on the Council by majority vote of the remaining Council members, pursuant to § 3(b) of the Elkton Charter.

The term "election" is often used to refer to popular elections, but it is also used to describe other exercises of the democratic process whereby government officials are put in office other than by popular election. The Court notes that under Article VI, § 7, of the Virginia Constitution, judges may be "appointed" by the Governor or "elected" by the General Assembly. This Court holds that the term "elected" in § 15.2-2636 of the Public Finance Act is not limited to popular elections but also includes elections by the members of governing bodies.

As to the third issue, the Plaintiff argues that the three to two vote of July 30, 2001, was ineffective because there were actually six "elected" members

of Council on that day and three is not a majority of six. The Plaintiff argues that the Mayor is considered a member of Town Council under § 20 of the Elkton Code and should be counted as a member of Council for determining what constitutes "a majority of all the members elected to its governing body" under § 15.2-2636.

An affirmative vote of a "majority" typically means a vote of yes by more than half of the people entitled to vote. Although § 20 of the Elkton Code describes the Mayor as a member of the Town Council, § 16 of the same code denies the Mayor the ability to cast a vote on any pending matters until and unless a tie vote has occurred. Therefore, except in the case of a tie, the Mayor is not entitled to vote, and, therefore, does not count for the purpose of defining a majority. This Court holds that since the Mayor is not entitled to vote except in cases of a tie, then in the absence of a tie, the Mayor is not counted for purposes of determining what constitutes a majority. *Cf. Biddeford Board of Education v. Biddeford Teachers Assoc.*, 1997 Me. 17, 688 A.2d 922 (1997). Therefore, there were only five members of council on July 30, 2001, and the affirmative vote of three Council members constituted a majority vote under § 15.2-2636 of the Public Finance Act.

As to the fourth issue, the Court has examined in detail the three bond resolutions passed by Council (on May 21, 2001, on July 30, 2001, and on September 17, 2001) to determine whether the purposes that the Town Council articulated for these bonds are permissible purposes under the Public Finance Act. The scope of permissible purposes for a bond issue is broad, but it is not infinite. Both the July and September resolutions state that the purpose of the bonds in question is "to finance the cost of acquisition of real estate for passive or active community and/or recreational facilities or other future needs of the Town (the 'Project'). ..."

Section 15.2-2636 of the Public Finance Act requires a bond resolution to state "the maximum principal amount of the bonds to be issued and in brief and general terms the purpose or purposes for which the proceeds of the bonds are to be used." Section 15.2-2607 of the Code authorizes a governing body "to provide by ordinance or resolution for the issuance ... of bonds of the locality for the purposes set forth in and subject to the provisions of this chapter." Section 15.2-2604 describes the powers of localities and contains a comprehensive and exhaustive list of permissible purposes for which bonds may be issued under the Public Finance Act.

The Plaintiff argues that the bond resolution provides that the proceeds may be used for two separate and distinct purposes: (1) to acquire real estate and (2) to finance other future needs of the Town. The Defendant, on the other hand, argues that the "project" is defined as "the cost of acquisition of real estate for passive or active community and/or recreational facilities" and

that "or other future needs of the Town" simply modifies the "project" as defined in the Resolution. In other words, the Defendant contends that the "other future needs of the Town" can only be as related to the acquisition of real estate, *i.e.* the bond proceeds can be used to acquire real estate which real estate may be used for "other future needs of the Town."

The Court must determine whether the phrase "future needs of the Town" describes the use of land which may be acquired by the proceeds of the sale of the bonds, as the Defendant contends, or whether the phrase announces a second and impermissible purpose for which the bonds are issued, as the Plaintiff contends.

In both the resolution of July 30, 2001, and of September 17, 2001, the purpose for the bonds is stated as follows:

> Whereas, the Town Council of the Town of Elkton, Virginia (the "Town"), adopted a resolution on May 21, 2001, authorizing the issuance of the Town's general obligation bond (the "Bond") to finance the cost of acquisition of real estate for passive or active community and/or recreational facilities or other future needs of the town (the "Project"). ...
>
> 1. *Authorization of Bond and Use of Proceeds.* The Town Council hereby determines that it is advisable to contract a debt and to issue and sell the Bond pursuant to the Town Council's May 21, 2001, Resolution. The issuance and sale of the Bond are hereby authorized. The proceeds from the issuance and sale of the Bond or [sic] shall be used to pay the costs, in whole or in part, of the Project.

The language of the relevant passage of the resolutions of July 30, 2001, and September 17, 2001, is ambiguous and the intent of the Town Council is impossible to discern from the words used. However, in describing the purpose for issuing the bonds, both resolutions refer to the previous resolution dated May 21, 2001, which was ineffective due to inadequate advertising. The May 21 resolution is entitled:

> Resolution of the town council of the Town of Elkton, Virginia, declaring its intention to reimburse itself from the proceeds of a financing for acquisition and development of passive and active recreational facilities and future needs of the Town.

In describing the purpose for issuing the bonds, the first paragraph of the May 21 resolution indicates that:

The Town Council of the Town of Elkton, Virginia ("Town") has determined that it is necessary or desirable to advance money to pay the costs of acquiring and constructing passive and active recreational facilities and future needs of the Town ("Project") and to reimburse such advances with proceeds of one or more financings.

In the May 21 resolution, it is evident that the "future needs of the Town" are described as a purpose for issuing bonds, which is separate from the purpose of acquiring real estate. Section 15.2-2604(1) of the Public Finance Act empowers governing bodies to "[a]cquire, construct, reconstruct, improve, extend, enlarge, equip, maintain, repair, and operate any project which is located within or outside the locality." Section 15.2-2604(12) of that act similarly empowers governing bodies to "[a]cquire, hold, and dispose of real and personal property in the exercise of its powers and the performance of its duties under this chapter." However, nothing in § 15.2-2604, or elsewhere in the Public Finance Act, empowers a governing body to issue bonds for the purpose of financing the general "future needs" of the locality.

Under § 15.2-2602, a locality is prohibited from issuing bonds under the Public Finance Act in order to finance a "project" which consists of "current expenses" or "specific undertakings from which the locality may derive revenues." The phrase "future needs of the Town" can be interpreted as encompassing these two explicitly prohibited purposes. Therefore, the Court finds that financing the "future needs of the Town" is not a permissible purpose for issuing bonds under the Public Finance Act. The "future needs of the Town" are indefinite, and a bond must be issued with a more definite purpose.

Therefore, the Court holds that the July 30, 2001, and the September 17, 2001, bond resolutions incorporate the May 21, 2001, bond resolution by reference and thus incorporate the impermissible purpose of financing the "future needs of the Town." Pursuant to Code § 15.2-2658, the Court finds that the articulation of this impermissible purpose constitutes a substantial defect or material error in the bond resolution.

Wherefore, it is hereby adjudged, ordered, and decreed that the Bond Authorization Resolutions of July 30, 2001, and September 17, 2001, are null and void. The cost of the publication required in this suit is taxed to the Defendant and shall be discharged in ninety days from the date of this Order. The Clerk of the Court is directed to send certified copies of this Opinion and Order to W. T. Robey, III, Esquire, Counsel for the Plaintiff Mary K. Hutton, and to M. Christopher Sigler, Esquire, Counsel for the Defendant Town of Elkton.