**AROOSTOOK HOME CARE AGENCY, INC.**

v.

**COMMISSIONER OF HUMAN SERVICES, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 17, 1988.
Decided Dec. 30, 1988.

Donna L. Zeegers (orally), Augusta, for plaintiff.

James E. Tierney, Atty. Gen., T. Christopher Beach (orally), Asst. Atty. Gen., Augusta, for Commissioner of Human Services.

Durward W. Parkinson (orally), John M.R. Paterson, Bernstein, Shur, Sawyer & Nelson, Portland, for First Allied Home Health.

Before ROBERTS, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

GLASSMAN, Justice.

The plaintiff, Aroostook Home Health Care Agency, Inc., a nonprofit home health agency operating in Aroostook County, appeals from a judgment of the Superior Court (Kennebec County; *Wathen, J.,* Supreme Judicial Court, sitting in the Superior Court) affirming a decision by the Commissioner of Human Services [1] (Commissioner) to issue a certificate of need to First

1. The current Commissioner of Human Services, Rollin Ives, has been substituted for Michael Petit, past Commissioner, who granted the certificate of need to First Allied.

Allied Home Health (First Allied), a proprietary home health agency operating in Cumberland and York Counties, for the establishment of branch offices in a statewide five-phase project. The plaintiff challenges the sufficiency of the evidence to support the Commissioner's decision and contends the Commissioner exceeded his statutory authority in issuing one certificate of need (CON) to First Allied for all five phases of its proposed project. We affirm the judgment of the Superior Court.

## I.

This case arises under the Certificate of Need Act (CON Act), *see* 22 M.R.S.A. §§ 301–324 (1980 & Supp.1988), the regulatory scheme for the planning and development of Maine's health care system.[2] Pursuant to the Act, a certificate of need is required for, *inter alia*, "[t]he construction, development or other establishment of a new health care facility." *Id.* § 304–A(8) (Supp.1988). The definition of a "health care facility" includes "home health care providers." *See id.* §§ 303(7), (11–A).

The CON Act and regulations adopted thereunder by the Department of Human Services (Department) set up a review process for the determination of whether a CON shall be issued. After the Department is satisfied that through an application process all necessary information for

evaluation has been provided, the application is considered complete. *See id.* §§ 306–A(2), (3), 307. The Department then provides written notification of the beginning of a review. *Id.* § 307(1). The notice contains information regarding the proposal and a statement that a public hearing before the Certificate of Need Advisory Committee (Advisory Committee) will be held during the course of review if requested by any person directly affected[3] by the review. *Id.* § 307(1), (2–A), (2–B). The statute requires that the staff of the Department—the Office of Health Planning and Development (OHP & D)—make available to the Advisory Committee and affected persons its preliminary analysis and recommendations regarding an application prior to such hearing. *See* § 307(2–B)(B). At the hearing, any person has the right to present oral or written arguments and evidence relevant to the proposal in review and any person directly affected may conduct "reasonable questioning of persons who make relevant factual allegations." *Id.* § 307(2–B)(C). Committee members may also conduct reasonable questioning. *Id.* § 307(2–B)(D).

The Act establishes a time period after a hearing for the submission of written comments by interested or affected persons to the Department which in turn provides copies of the comments to appointed Advisory

---

2. The purposes of the Maine CON Act are to:
   A. Promote effective health planning;
   B. Assist in providing quality health care at the lowest possible cost;
   C. Avoid unnecessary duplication in health facilities and health services and ensure that only those facilities that are needed will be built or modified;
   D. Assure that state funds are not used to support unnecessary capital expenditures made by or on behalf of health care facilities;
   E. Provide an orderly method of resolving questions concerning the need for health care facilities and health services which are proposed to be developed;
   F. Permit consumers of health services to participate in the process of determining the distribution, quantity, quality and cost of these services; and
   G. Provide for a certificate of need program which meets the requirements of the National Health Planning and Resources Development Act of 1974, Public Law 93–641 and its accompanying regulations.

22 M.R.S.A. § 302 (1981) (footnote omitted).

3. The term "affected person" means, *inter alia*, "health care facilities ... that can demonstrate that they provide services similar to the services of the facility under review, to patients residing in the health service area" or health care facilities "that, prior to receipt by the Department of the application being reviewed, have formally indicated by the filing of a letter of intent with the Department, an intention to provide similar services in the future to patients residing in the health service area." Me.Dep't Hum.Serv., Office of Health Planning and Development, Maine Certificate of Need Procedures Manual ch. 3(1)(E)(F) (Sept. 19, 1985) (hereinafter CON Procedures Manual). The definition of a "directly affected person" is essentially that of an "affected person" with the qualification that the person's "services would be directly and substantially affected by the application under review." *Id.* ch. 3(27)(D).

Committee members and all persons registered as affected persons. *Id.* § 307(2–B)(F). The OHP & D is required to submit a final report to the Commissioner, a copy of which is sent to the applicant and notification of the report is sent to registered affected persons. *Id.* § 307(2–B)(I), (5–A)(A). At the Advisory Committee's next meeting after the close of the period for written comments, the Advisory Committee is required, by majority vote of the appointed members present and voting, to make a recommendation for approval or disapproval of the application. Members may make additional oral or written comments with regard to the basis for their recommendation. *Id.* § 307(2–B)(H). The Committee's recommendation and any accompanying comments are forwarded to the Commissioner. *Id.*

The Commissioner is then required to approve or disapprove an application for a CON on the basis of, *inter alia*, the application and documentary material timely submitted by the applicant and interested or affected persons; documentary material generated by the department; recordings or transcriptions of any hearings or meetings held; the preliminary OHP & D report; the recommendations of the Advisory Committee; and the final OHP & D report. *Id.* The statute provides that "[i]f the decision is not consistent with the recommendations of the Certificate of Need Advisory Committee, the commissioner shall provide a detailed statement of the reasons for the inconsistency." *Id.* § 307(5–A)(B).

The Act also sets forth the substantive standards and criteria [4] to be used by the Commissioner in making his determination. The standards, in relevant part, are

§ 309. **Principles governing the review of applications**

1. **Determinations for issue of certificate.** A certificate of need shall be issued whenever the department determines:

A. That the applicant is fit, willing and able to provide the proposed services at the proper standard of care;

B. That economic feasibility of the proposed services is demonstrated in terms of: Effect on the existing and projected operating budget of the applicant; the applicant's ability to establish and operate the facility or services in accordance with licensure regulations promulgated under pertinent state laws; and the projected impact on the facility's costs and rates and the total health care expenditures in the community and the State;

C. That there is a public need for the proposed services; and

D. That the proposed services are consistent with the orderly and economic development of health facilities and health resources for the State and are in accordance with standards, criteria or plans adopted and approved pursuant to the state health plan developed by the department.

*Id.* § 309.

After the Commissioner makes his decision, any person directly affected by a review may, "for good cause shown," request a hearing for purposes of reconsideration. *Id.* § 310. Once final action has been taken by the Commissioner on a request for reconsideration, any person aggrieved by the decision is entitled to judicial review in accordance with the Administrative Procedure Act. *Id.* § 311.

II.

On August 30, 1985 First Allied filed a letter of intent with the OHP & D regarding First Allied's proposal to establish branch offices and expand its home health care services statewide. The OHP & D notified First Allied that the CON Act was applicable to the proposal and that First Allied could apply for a single CON but

---

**4.** The statute further sets out specific criteria, *see* 22 M.R.S.A. § 309(2) (1980 & Supp.1988), and states that "[t]he commissioner shall, in issuing a certificate of need, make his decision, to the maximum extent practicable, directly related to criteria established under federal laws and standards or criteria prescribed in regulations promulgated by the department pursuant [to its statutory authority]." *Id.* § 309(5) (Supp. 1988). See CON Procedures Manual ch. 8(2)(P)–(V) for the criteria promulgated by the Department.

that the data pertinent to each phase should be presented separately. On October 31, 1985 First Allied filed its application. The OHP & D declared the application complete on March 14, 1986 after requested supplemental information was filed by First Allied.

In response to First Allied's application, thirteen home health care agencies registered as affected or directly affected persons including the plaintiff, Aroostook Home Care Agency, Inc., a non-profit home health agency providing services in Aroostook County and a potential competitor of First Allied. One of the directly affected persons requested a public hearing and the statutorily required notice was given.

Prior to the hearing on May 1, 1986, the OHP & D staff issued its preliminary report of First Allied's application. The review set forth First Allied's proposal to expand its intermittent home health services and continuous care hourly services to five geographically defined phases over a period of approximately 21 months:

Phase I—Hancock, Knox, Lincoln, Sagadahoc and Waldo Counties

Phase II—Penobscot and Piscataquis Counties

Phase III—Androscoggin, Oxford and Franklin Counties

Phase IV—Kennebec and Somerset Counties

Phase V—Aroostook and Washington Counties

The preliminary report by the OHP & D recommended approval of First Allied's CON application. The OHP & D found First Allied fit, willing, and able to provide the services and incur the estimated $67,-300 capitalized office lease costs and the $18,000 costs associated with the purchase of furniture and equipment for the five-phase project. The OHP & D also initially found there was a need for the proposed home health services based on the data supplied by the applicant, evaluated in the context of historical and projected growth trends and policy, and the application of formulas that calculate estimates of unmet needs for each of the five phases. The OHP & D also concluded that there was

adequate staffing, that the proposal was economically and financially feasible, and that it was consistent with the orderly and economic development of the health care system. *See* 22 M.R.S.A. § 309(1) (Supp. 1988) (principles for determination to issue a certificate of need).

The public hearing for consideration of First Allied's CON application was held on May 15, 1986. At the hearing, two representatives of Central and Southern Maine Area Agencies on Aging supported First Allied's application. Eleven individuals representing ten home health agencies testified against the proposal, raising questions regarding, *inter alia,* the data First Allied used in determining the public need for its services. Both before and during the comment period following the public hearing, the OHP & D received further written comments opposing the application. Most of the comments focused on the lack of a public need for a home health care agency in the particular commentator's geographical area.

The OHP & D issued its final report on July 8, 1986. The OHP & D, in its summary report, reversed its preliminary recommendation of approval and recommended that the application be denied. The ultimate findings of the OHP & D were:

In summary the OHP & D now finds:

1. The applicant is fit, willing and able to provide the proposed services at the proper standard of care;

2. The need for the proposed project has *not* been demonstrated;

3. The applicant has *not* provided evidence that the proposed project will be adequately staffed or that the proposal will be financially or economically feasible;

4. The applicant has *not* demonstrated that the proposal is consistent with the orderly and economic development of the health care system; and

5. Timely notice appears to have been given.

Based on the revised findings cited above, the Division recommends the DISAPPROVAL of this project.

Copies of the summary report were provided to the Advisory Committee members.

On July 17, 1986, the Advisory Committee at its deliberative session voted 5:1 to recommend that the Commissioner approve the application. In a written comment three members of the Advisory Committee noted the lack of specific standards for assessing need and the insufficiency of available data. The three members concluded, however, that an unmet and growing need for home health services existed based on demographics demonstrating an increasing elderly and frail and elderly population and regulatory restraints that restrict institutional care services.

The Commissioner issued the CON to First Allied on October 10, 1986. In the Commissioner's letter notifying First Allied, the Commissioner stated:

I am issuing this Certificate because I agree with the recommendations of the Certificate of Need Advisory Committee and [OHP & D's] initial analysis. Although [OHP & D] attempted to quantify lack of need in their final analysis, I do not consider the additional information sufficient to warrant denying the application in view of the fact that this project proposes to serve only a portion of the people in need of home health services....

. . . .

The basis for my decision to issue this Certificate is consistent with the basis that formed the Certificate of Need Advisory Committee's recommendation that I approve this proposal.

Thereafter, the plaintiff timely petitioned for a reconsideration which was denied by the Commissioner. On January 2, 1987, the plaintiff filed a complaint in the Superior Court, requesting that the Superior Court declare the Commissioner's approval null and void. The court affirmed the Commissioner's decision, and the plaintiff appeals.

### III.

■ We review, as did the Superior Court, the administrative action for any legal error. *Bradbury Memorial Nursing*

*Home v. Tall Pines Manor Assocs.*, 485 A.2d 634, 639 (Me.1984). The Administrative Procedures Act provides that the court can revise or modify an administrative decision that is "unsupported by substantial evidence on the whole record." 5 M.R.S.A. § 1107(4)(C)(5) (1979). We have stated that the standard, "unsupported by substantial evidence on the whole record," is identical to the clear error standard of review used to review factual findings made by a trial court. *Gulick v. Board of Environmental Protection*, 452 A.2d 1202, 1207–1208 (Me. 1982).

The plaintiff, relying primarily on the final report of the OHP & D, challenges the finding of the Commissioner that there is a public need for the proposed services of First Allied. The CON Act requires the Commission to make a decision whether to issue a certificate on the basis of the informational record developed in the course of review which includes both the preliminary and the final OHP & D reports. 22 M.R.S.A. § 307(5–A)(B), (C)(5), (7) (Supp.1988). The statutory framework does not favor one OHP & D report over the other but in fact places an emphasis on the report of the Advisory Committee. Section 307 provides, "If the decision is not consistent with the recommendations of the Certificate of Need Advisory Committee, the commissioner shall provide a detailed statement of the reasons for the inconsistency." *Id.* § 307(5–A)(B). Accordingly, the plaintiff gains nothing from the Commissioner's reliance on the preliminary OHP & D report and the Advisory Committee's recommendation rather than the final OHP & D report.

Contrary to the plaintiff's contention that there is no evidence in the record to support the Commissioner's finding of a public need, our review of the record reveals substantial evidence to support the finding, including that relied on by the Advisory Committee: demographic data demonstrating a current and expected future increase of the elderly and frail and elderly populations, the major users of home health services, and increasing regulatory and financial restrictions on institutional

care which encourage the increased use of home health services.

We also find no merit in the plaintiff's argument that there is no evidence to support the Commissioner's findings regarding the availability of qualified staff for First Allied's proposal and that the project is financially and economically feasible. Although the record contains inconsistent evidence, we have stated that "[t]he fact that the record contains inconsistent evidence or that inconsistent conclusions could be drawn from the record does not prevent the agency's findings from being sustained if there is substantial evidence to support them." *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n,* 450 A.2d 475, 479 (Me.1982). On this record the trial court correctly determined that there was substantial evidence to support the Commissioner's decision to issue the CON.

### IV.

The plaintiff also contends that the Commissioner violated his statutory authority, *see* 5 M.R.S.A. § 11007(4)(C)(2) (1979), by reviewing and approving a single CON for First Allied's five-phase project rather than requiring First Allied to apply for a CON for each branch office it establishes throughout the State.

We find nothing in the statutory language that demonstrates a legislative intent that each phase of a single project for home health services be reviewed separately. Contrary to the plaintiff's contention, the review of the entire project in one CON was probably of assistance to the Department in evaluating the proposal against the statutory and regulatory standards and objectives. The Department reviewed each phase separately, requiring that First Allied compile individual statistics and financial figures for each area. By reviewing the entire proposal, the Department also had the opportunity to examine the project's potential effect on the Maine health care delivery system and the proposal's feasibility as a whole. Evaluation of the project's components separately and in their entirety is therefore consistent with the letter and spirit of the CON Act. *See*

22 M.R.S.A. § 302 (1980) (purposes of statute).

The entry is:

Judgment affirmed.

All concurring.