STATE OF MAINE                                          SUPERIOR COURT
                                                        CIVIL ACTION
KENNEBEC, ss.                                           DOCKET NO. AP-06-26

MAINE ASSOCIATION OF
HEALTH PLANS, et al.,

          Petitioners

     v.                                                 DECISION AND ORDER

DIRIGO HEALTH AGENCY,

          Respondent


     This matter is before the court on petition for review of refusal of agency to act

pursuant to 5 M.R.S.A. § 11001(2).  Petitioners are Maine Association of Health Plans,

Anthem Health Plans of Maine, Inc., d/b/a Anthem Blue Cross and Blue Shield, Maine

State Chamber of Commerce and Maine Automobile Dealers Association Insurance

Trust.  The respondent is the Board of Directors of the Dirigo Health Agency, an

"independent executive agency to arrange for the provision of comprehensive,

affordable health care coverage to eligible small employers, including the self-

employed, their employees and dependents, and individuals on a voluntary basis."

24-A M.R.S.A. § 6902.  The responsibilities of the agency's Board of Directors are to

meet the requirements of Dirigo Health to exercise power conferred by the legislation

which is "deemed and held to be the performance of essential governmental functions."

Id.

     Pursuant to 24-A M.R.S.A. § 6913(1), the respondent Board is to provide an

opportunity for a hearing and shall "determine annually not later than April 1st the

aggregate measurable cost savings, including any reduction or avoidance of bad debt

and charity care costs to health care providers in this State as a result of the operation of

Dirigo Health and any increased MaineCare enrollment due to an expansion in MaineCare eligibility occurring after June 30, 2004." Under date of March 7, 2006, the Dirigo Health Agency, through its counsel, moved the Board of Directors of Dirigo Health to continue the public hearing on aggregate measurable cost savings then scheduled for March 27, 2006. The agency asked the Board to reschedule the hearing to a date after August 1, 2006, and to suspend filing deadlines contained in its procedural order. Under date of March 27, 2007, (sic) the Board of Directors of the Dirigo Health Agency granted the motion "until the matter is next scheduled for an adjudicatory hearing not later than August 15, 2006." Board Decision. p. 5.

Under the Maine Administrative Procedures Act in Title 5 of the Maine Revised States Annotated, "Any person aggrieved by the failure or refusal of an agency to act shall be entitled to judicial review thereof in the Superior Court. The relief available in the Superior Court shall include an order requiring the agency to make a decision within a time certain." 5 M.R.S.A. § 11001(2). The respondent challenges the authority of this court to provide relief, first arguing that there has been no final agency action and, second, asserting that there has not been a failure or refusal of the agency to act, but the continuance was a simple procedural matter permissible under the directory nature of the statute. The agency suggests that the petitioners cannot be aggrieved until it can be shown that they have suffered particularized harm under some ruling by the agency.

Instructions to this court are clear. *Eastern Maine Medical Center v. Maine Health Care Finance Commission,* 601 A.2d 99 (Me. 1992) discusses the issues raised dealing with the relationship between agency action and review by the courts. It makes reference to 5 M.R.S.A. § 11001 (1989) for the specific authority in the court to take appropriate action if a person is aggrieved by the failure or the refusal of an agency to act.

Considering a statute, in that case the decision timeline of the Maine Health Care Finance Commission which contained a deadline for certain agency action, the court said, "The Commission's failure to meet this deadline is clearly the sort of agency inaction at which section 11001 is aimed." In making reference to the second sentence in the administrative statute, "The relief available in the Superior Court shall include an order requiring the agency to make a decision within a time certain," (section 11001(2)), the decision notes:

> The statute does not authorize sanctions or any other remedy as being appropriate when a hearing has already been scheduled by the agency; nor do we have the authority to create such a remedy. Unless the legislature provides some consequence, agencies may continually escape censure for ignoring its call to timely action by scheduling such action only after the 120 days have elapsed or a complaint is filed pursuant to Rule 80C.

*Eastern Maine Medical Center v. Maine Health Care Finance Commission*, 601 A.2d at 101.[1]

The court has, therefore, made clear this court's authority in the present case. This court does not have jurisdiction over the matter pending before the Dirigo Health Agency Board of Directors and that can only take place after final agency action. It does have the authority to provide relief to an aggrieved party for failure of an agency to meet a statutory directive. An aggrieved party is "a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." BLACK'S LAW DICTIONARY (7th ed.). The respondent has failed to meet its statutorily directed April 1 deadline.[2] Under those circumstances, the court must determine whether the petitioners are "aggrieved."

---

[1] The Board recognizes this authority in this Court. It cites *Bradbury Memorial v. Tall Pines Manor*, 485 A.2d 634 on page 4 of its Decision, the directory time deadlines provide "a legal basis for going to the Superior Court to get an order requiring the Department to render a decision."

[2] Whether it has failed to meet the deadline or refused to meet the deadline, the result is the same. A procedural order continuing the matter past the deadline is a failure to act. A vote to refuse to conduct the proceedings required by statute would constitute a refusal.

Chapter 87 of Title 24-A of the Maine Revised Statutes appears to be a thought-out scheme whereby the entities providing the major funding for health care providers in the State of Maine are motivated to cooperate with the Dirigo Health subsidized health insurance program to diminish or alleviate cost shifting wherein the premium paying policyholders are caused to absorb the additional cost of health care provided to the uninsured or those unable to pay. It contemplates negotiations by major providers of health insurance with the health care providers to achieve savings based upon a smaller number of uninsured thereby significantly increasing the spreading of risk. In order for the scheme to work, it contemplates that the insurers be able to apply for and justify rate relief after they have made every good faith attempt to negotiate cost savings. While it is obviously the desire of all parties that the cost savings would be such that it would not be necessary for the insurers to find rate relief, 24-A M.R.S.A. § 6913(2), recognizes the reality of the needs of the health insurance carriers to avail themselves of rate relief, to wit: "The savings offset amount determined by the board in accordance with this subsection is the determining factor for inclusion of savings offset payments in premiums through rate setting review by the Bureau." Nothing in this language minimizes the authority of the Bureau of Insurance to reduce rates the Superintendent finds to be excessive or unfairly discriminatory.

The Dirigo Health statute follows a very specific time frame to implement the needs of all of the parties to meet the goal of the legislation.[3] The Dirigo Health Agency Board of Directors is "directed"[4] to provide an opportunity for a hearing and to make its decision determining the aggregate measurable cost savings by April 1 of each year.

---

[3] One provision causes the court to ponder. Title 24-A M.R.S.A. § 6913(2)(A) requires the Board to determine the savings offset amount "not later than April of each year."

[4] The court's use of this term is intentional. In the absence of sanctions or some otherwise clear legislative intent, the deadlines are directory rather than mandatory.

The Board of the agency is then required to file its determination with the Superintendent of Insurance by May 1, i.e., within 30 days from the issuance of its decision. The Superintendent is required to hold an adjudicatory hearing and either approve in whole or in part or disapprove the Board's determination. This action must be taken within six weeks after filing of the agency Board determination. Dirigo Health Board is then required, using the Superintendent's determination of aggregate measurable cost savings, to determine the "savings offset amount." This offset amount is a result of its consideration of the "demonstration of recovery of savings offset payments through reduction in rate of growth in State's health spending and bad debt and charity care." 24-A M.R.S.A. § 6913(7). The statute goes on to say that a "health insurance carrier shall use best efforts to ensure health insurance premiums reflect any such recovery of savings offset payments as those savings offset payments are reflected through incurred claims experience in accordance with subsection 9." 24-A M.R.S.A. § 6913(7)(A). In accordance with that scheme, it is anticipated that the petitioners would be in a position to file with the Superintendent of Insurance an application for rate modification of individual products which should reflect the savings offset payment assessment by the Board in July of each year. This contemplates, on individual health insurance policies, that such filing must be made not less than 60 days in advance of the stated effective date and, furthermore, the Superintendent may suspend the effective date for a period of time not to exceed 30 days.[5] 24-A M.R.S.A. § 2736(1).

---

[5] In his Decision and Order regarding Anthem Blue Cross and Blue Shield 2006 Individual Rate Filing dated December 19, 2005, the Superintendent ordered that revised rate filings could be submitted for review and would be approved. However, they would be "effective on such date as will assure a minimum of 30 days prior notice to policyholders, . . ." The court notes that this 30 days took it beyond the January 1st expectation of effective change in premiums.

The Dirigo statutory deadlines also contemplate that the petitioners would provide their large group policy rating to the Superintendent in August, requiring a minimum 120 days before a January 1st effective date. This provides a target date for hearing of September with the Superintendent issuing the rate decision within 30 days, probably October. The small group policies must have rating completed by October and must be filed with the Bureau by November 1, a minimum of 60 days before the January 1 effective date. In sum, under all considerations, the notification to policyholders or members of the individual rate modifications must be 30 days in advance of the implementation of rates to realistically process the decisions of the Superintendent of Insurance and to provide notice. It is contemplated that the health insurance carriers would have the Bureau decision no later than November 15, 2006.[6]

It is alleged by the petitioners that if the Dirigo Board meets all other deadlines starting with the continued decision date, they would not receive the savings offset amount from the Board until the middle of November of 2006, too late to achieve the purposes of the law.

The fundamental issue for the court, then, is whether the petitioners are aggrieved when faced with the reality under the Insurance Code of an inability to complete the process for premium rate modification in order to provide notice and implementation for an effective date of January 1, 2007.[7] It is clear that this circumstance affects the pecuniary and property rights of the petitioners adversely. Furthermore, it would have a substantial adverse effect on the personal, pecuniary or property rights of the policyholders or members.

---

[6] This calendar also contemplates the historical time used by the Dirigo Health Agency Board to determine the savings offset amount; in 2005 it was two weeks.

[7] It was suggested at oral argument on this issue that the 2006 rates were not implemented until March albeit effective January 1. If true, the court takes judicial notice that this creates a hardship on policyholders and members.

In its decision to continue this matter, the Board cited the rationale for the request for continuance and the suspension of the filing deadline. It states:

> The primary reason given by the DHA for its motion centered around its statement that 'the relevant data necessary to calculate the AMCS for 2005, including Medicare cost reports, will not be available until July 1, 2006, which is the filing deadline for hospitals with fiscal years ending December 31 . . . The unavailability of the data makes it impossible for DHA to prepare and present its case.'

The petitioners dispute this allegation on two grounds. First, they argue that the hospitals with a fiscal year ending December 31 are required to file the Medicare cost reports within five months, i.e., the first of June. Secondly, petitioners argue that the data included in those reports is small in its impact as compared to the statutorily required information of bad debt and charity care resulting from the operation of Dirigo Health. *See* 24-A M.R.S.A. § 6913(7). Neither party has explained to this court whether there has been a change in the filing requirements of the Medicare cost reports since this legislation was enacted or whether the reality of the filing dates of these reports were ever presented to the legislature. In the absence of such information, the court must presume that the legislature had well in mind the availability of the information to the Board and provided a direction to the agency that affected a balance between the needs of the health insurance carriers and the Dirigo Health Agency plan.[8] Neither party has disputed the assertion by the petitioners that any modifications to the aggregate measurable cost savings are presentable to the Superintendent of Insurance to be considered by him in his regulatory conclusion prior to return to the Board for its determination of the savings offset.

The effect of the delay occasioned by the Board's action is not insignificant. The court understands that the savings offset payment determined for the year 2006 is $43

---

[8] The court uses the term "health insurance carriers" as a generic term meant to include health insurance carriers, third-party administrators and employee benefit excess insurance carriers covered under the Act.

million. This court is constrained by both reality and its authority from providing relief for the period of time that has transpired from April 1 to the date of this decision. It must give relief to the extent possible, and make it clear to the Dirigo Health Agency Board of Directors for future proceedings under this legislation that the insurance market responsible for making the Dirigo Health Agency work is aggrieved by delay and is entitled to relief in the Superior Court from that delay, now and in future years. The court is also mindful of the fact that at the date of issuance of this decision, the legislature is in the final stages of its session. The agency has not presented to this court any information suggesting that it has sought relief with the legislature for what it perceives to be an oppressive deadline for making its decision.

In addition to requesting relief from the motion to continue, the petitioners have asked the court to give them relief in their dealings with the agency Board to prepare for presentations to that Board in a manner consistent with the rights to which they are accustomed under the Administrative Procedures Act. As the court has noted, in accordance with *Eastern Maine Medical Center v. Maine Health Care Finance Commission,* its authority is limited to deal with the failure or refusal of an agency to act within its directed time frame. The court must deny this request for relief since it has no jurisdiction.[9]

---

[9] At oral argument, it was clear that the petitioners believe that the activities by the Board interfering with petitioners' ability to obtain information relative to the agency's consultant and other data and forcing the petitioners to utilize the Freedom of Information Act rather than provide discovery is a clear example of bad faith on the Board's part with regard to the insurance carriers. An example is a ruling by the Board insisting that petitioners adhere to a prehearing schedule that complies with the April 1 deadline. On the part of the respondents, and the intervenor, it is clear that they believe that the carriers are motivated to scuttle the Dirigo Health Agency program by asking the court to nullify the proceedings of the Dirigo Health Agency Board and therefore defeat the purposes of the legislation. The court suspects that this perception by the parties is left over from the proceedings before the legislature and the continuing political issues relating to the creation of the agency. Clearly, if all parties do not follow the statute and at least determine whether the deadlines are realistic, it will not work. That matter is not before this court. That is a matter of good faith.

For the reasons stated herein, the entry will be:

ORDERED: The Dirigo Health Agency Board of Directors, after opportunity for hearing conducted pursuant to Title 5, Chapter 375, Subchapter 4, shall determine the aggregate measurable cost savings, including any reduction or avoidance of bad debt and charity care costs to health care providers in this State as a result of the operation of Dirigo Health and any increased MaineCare enrollment due to an expansion in MaineCare eligibility occurring after June 30, 2004, no later than May 12, 2006; this matter is REMANDED to the Dirigo Health Agency Board of Directors for compliance.

Dated: April __/ᵧ__, 2006

Donald H. Marden
Justice, Superior Court

Date Filed __3/30/06__ __Kennebec__ Docket No. __AP06-26__
County

Action __Petition for Review__
- William Stiles, Esq. 80C
  One Portland Square
  P.O. Box 586
  Portland, Maine 04112-0586 (Chamber of
                                Commerce)

MARDEN

-Joseph Ditre Esq (Consumers)
PO Box 2490
Augusta Maine 04338

__Maine Association of Health, et als__ VS. __Dirigo Health Agency Board of Directo__

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| - Christopher T. Roach, Esq. (Anthem)<br>One Monument Square<br>Portland, Maine 04101<br>- Bruce Gerrity, Esq. (Me. Automobile )<br>45 Memorial Circle<br>P.O. Box 1058<br>Augusta, Maine 04330<br>- D. Michael Frink, Esq. (Me. Assn. of Health) | William Stiles, Esq.<br>6 State House Station<br>Augusta, Maine 04333-0006<br><br>-William Laubenstein, AAG (Dirigo)<br>State House Sta 6<br>Augusta Maine 04333 |

| Date of Entry | Kimball Kenway, Esq.<br>One Canal Plaza<br>P.O. Box 7320 Portland, Maine 04112 |
|---|---|

| Date of Entry | |
|---|---|
| 3/30/06 | Petition for Review of Refusal of Agency to Act and Request for Expedited Review, filed. s/Roach, Esq.<br>Motion for Expedited Review and Incorporated Memorandum of Law, filed. s/Roach, Esq.<br>Proposed Order, filed.<br>Proposed Administrative Record, filed. (with attached exhibits 1-17) |
| ------ | Rule 80C Brief of the Maine Automobile Dealers Association Insurance Trust, filed. s/Pierce, Esq. |
| 3/31/06 | Rule 80C Brief of the Maine Association of Health Plans, filed. s/Kenway, Esq. |
| ------- | Brief of Petitioner Anthem Health Plans of Maine, Inc., filed. s/Roach, Esq |
| 3/31/06 | 80C Brief of Maine State Chamber of Commerce, filed. |
| 4/4/06 | Entry of Appearance and Statement of Position, filed. s/Laubenstein, AAG |
| 4/4/06 | Proposed Administrative Record, filed. s/Roach, Esq. |
| 4/4/06 | Attorney Roach notified of hearing date of 4/7/06 at 9:30 a.m. and to notify all counsel. |
| 4/5/06 | ORDER, Marden, J.<br>Copies mailed to attys of record.<br>Copy faxed to Christopher Roach, Esq. to further fax to all counsel.<br>(Court may not have entire listing of attorneys involved) |
| 4/5/06 | Entry of Appearance and Statement of Position, filed. s/Ditre, Esq.<br>Certificate of Service, filed. s/Ditre, Esq. |
| 4/6/06 | Brief of Dirigo Health Board of Directors, filed. s/Laubenstein, AAG |
| 4/6/06 | Reply Brief of Petitioner Anthem Health Plans of Maine, Inc., filed. s/Roach, Esq. |
| | Brief of Consumers for Affordable Health Care, filed. s/Ditre, Esq. |